JOHN TRACY, AS ADMINISTRATOR WITH THE WILL ANNEXED OF
THE ESTATE OF FRANK J. YOUNG, DECEASED, AND SUSIE M.
SMITH, FORMERLY SUSIE M. YOUNG, AND JOSEPH LORENZ V.
HENRY O. WHEELER AND WILLIAM A. SCOTT, ADMINISTRATOR OF
DAVID A. MURRAY, DECEASED.

Opinion filed April 25, 1906.

**Equity Will Not Cancel a Mortgage Solely Because Outlawed.**

Applying the maxim that "he who seeks equity must do equity," it
is *held,* that a court of equity will not cancel a real estate mortgage
securing a just debt, which concededly has not been paid, at the suit of
the mortgagor, or one standing in his shoes, when the only ground
urged for such relief is that the statute of limitations is available as
a defense against its foreclosure.

Appeal from District Court, Barnes county; *Glaspell,* J.

Action by John Tracy, administrator, and others, against Henry
O. Wheeler and William A. Scott. Judgment for plaintiffs and de-
fendants appeal.

Reversed.

*J. E. Robinson,* for appellants.

*Winterer & Winterer* and *Lee Combs,* for respondents.

YOUNG, J. The purpose of the plaintiff's action is to remove
a cloud from plaintiff's title. The complaint alleges: "That the de-
fendants on behalf of the estate of David A. Murray, deceased,
claim a lien or incumbrance on said real estate, adverse to these
plaintiffs, which said lien or incumbrance is further claimed by
said defendants by virtue of a certain mortgage made, executed
and delivered by one William N. Buswell and Margaret A. Bus-
well, his wife, to the said David A. Murray, covering said real
estate, which mortgage bears date November 10, 1882, and was
recorded in Book M of Mortgages, on page 236, in the office of the
register of deeds of the territory of Dakota, now state of North
Dakota, on November 25, 1882, at nine o'clock a. m." "That said
mortgage does not constitute a lien * * * and is invalid," and
"constitutes a cloud upon the title of plaintiffs"—and prays
(1) "that said claim be adjudged null and void: (2) that the
title be quieted in these plaintiffs; (3) for general relief." The de-
fendants' answer admitted that they held the mortgage set up
in paragraph 6 of the complaint, but denied its invalidity. The

trial court canceled the mortgage, and the case is here for trial de novo upon defendants' appeal.

There is no dispute as to the facts. The only ground urged for cancellation is that proceedings for the foreclosure of the mortgage are barred. The mortgage was given on November 10, 1882, and secures a note for $700, due November 10, 1887. On November 30, 1899, Margaret A. Buswell, the mortgagor, gave a quit claim deed to her daughter, Susie M. Young, for a nominal consideration of $25. The testimony shows that the land is worth about $2,000. All of the five witnesses for plaintiffs testified to the fact of nonpayment of the debt. Mrs. Buswell and her daughter, Susie M. Smith, one of the plaintiffs herein, testified that nothing had been paid since October 1, 1885, when an interest payment was made; and it is stipulated in the record that the debt has not been paid, and it appears that the plaintiff knew at all times that the debt was not paid. She received the quitclaim deed from her mother with that knowldge. It is clear that she is in no better position to ask relief at the hands of a court of equity than her mother, the mortgagor. For the purposes of this case we may assume, without deciding the question, that the statute of limitations is available as a defense against the enforcement of the mortgage either by action or power of sale. The majority of this court has reached the conclusion, upon a rehearing, that the plaintiff must fail Equity and good conscience require that she should pay the debt secured by the mortgage as a condition to its cancellation. The maxim "that he who seeks equity must do equity" voices a just and universal rule in determining the equitable rights of suitors, and should always be applied in cases like this. The action, even if treated strictly as a statutory action to determine adverse claims, is equitable (6 Pomeroy's Equity Jurisprudence, section 735), and is governed by equitable principles. The plaintiff seeks equity. They must do equity. Every man should pay his just debts. It is right that he should do so. The fact that he may not be coerced to discharge them by legal means affects only the legal character of his obligation. It does not alter the primary fact that he owes an obligation which in equity and good conscience he should pay. The Supreme Court of California, in applying this principle in a similar case (Booth v. Hoskins, 75 Cal. 276, 17 Pac. 227), said: "Common honesty requires a debtor to pay his just debts if he is able to do so, and courts, when called upon, always enforce such

payments if they can. The fact that a debt is barred by the statute of limitations in no way releases the debtor from his moral obligation to pay it. Moreover, one of the maxims which courts of equity should always act upon it, as suggested by the court below, that 'he who seeks equity must do equity.'" In accordance with this rule, it was held that, "where a mortgagor of land seeks to quiet title as against the mortgage deed, he will be required to pay the mortgage debt, regardless of whether or not the debt is barred by the statute of limitations." Merriam v. Goodlet (Neb.) 54 N. W. 686; Loney v. Courtnay, 24 Neb. 580, 39 N. W. 616; Brewer v. Merrick, 15 Neb. 180, 18 N. W. 43; Hall v. Hooper, 47 Neb. 111, 123, 66 N. W. 33; Booth v. Hoskins, 75 Cal. 271, 17 Pac. 225; Johnston v. S. F. S. Mine, 75 Cal. 135, 16 Pac. 753, 7 Am. St. Rep. 129; De Cazara v. Orena, 80 Cal. 132, 22 Pac. 74; Brandt v. Thompson, 91 Cal. 458, 27 Pac. 763; Boyce v. Fisk, 110 Cal. 107, 116, 42 Pac. 473; N. Y. B. & L. Ass'n v. Cannon, 99 Tenn. 344, 41 S. W. 1054; Cassell v. Lowry (Ind. Sup.) 72 N. E. 640, and cases cited; Spect v. Spect, 88 Cal. 437, 26 Pac. 203, 13 L. R. A. 137, 22 Am. St. Rep. 314; Driver v. Hudspeth, 16 Ala. 348; Gage v. Riverside Trust Co. (C.C.) 86 Fed. 984. See, also, Cole v. Savage (N. Y.) Clarke Ch. 179; Grinder v. Nelson, 9 Gill (Md.) 299, 52 Dec. 694; Barke v. Earley, 72 Iowa, 278, 33 N. W. 677; 1 High on Injunction (4th Ed.) section 452; 1 Story, Equity (13th Ed.) 65, 305; 1 Beach on Equity, section 439; 2 Jones on Mortgages, section 1806.

This doctrine was applied by this court in Satterlund v. Beal, 12 N. D. 122, 95 N. W. 518. In that case the plaintiff sought to cancel a mortgage against which the statute had run. The defendant counterclaimed for its foreclosure. The plaintiff attempted to plead the statute, but his pleading was insufficient. Upon a trial de novo, the court denied the prayer for cancellation and awarded judgment of foreclosure. The doctrine that a mortgage will not be canceled merely because the statute of limitations has run against an action to enforce it, and without payment of the amount justly due thereon, is of general acceptance. Our attention has been called to but two cases wherein cancellation has been awarded without payment. In Selby v. Sanford (Kan. App.) 54 Pac. 17, a mortgage was canceled on the sole ground that the statute had run against it. The opinion makes no reference to the equitable rule which is applicable to such cases. The case rests neither upon

reason or authority. In Kingman v. Sinclair, 80 Mich. 427, 45 N. W. 187, 20 Am. St. Rep. 522, a mortgage given 33 years previously by the holder of an equitable title under a state certificate, was canceled at the suit of the fee owner, who had been in possession for 24 years and had no knowledge of its existence until a very short time before he brought his suit. It was not clear that the debt had not been paid. The court held under the circumstances of that case the mortgage should be canceled without exacting payment. That case, in our opinion, does not militate against the rule laid down in the cases above cited. In this case the fact that the debt is not paid is conceded. The plaintiffs are entitled to relief only upon condition that they pay it. The judgment will be reversed, and the trial court is directed to enter an order permitting the plaintiffs to pay into court for defendant's use, within 30 days from the date of such order, the amount of the mortgage debt, and upon such payment being made to enter judgment of cancellation and in default of such payment within such period to enter judgment dismissing plaintiffs' action.

MORGAN, C. J., concurs.

ENGERUD, J. (dissenting). I am unable to concur in the conclusions of my associates in this case. It seems to me that their reasoning is unsound, because the case is not within the reason for the rules applied. The action is one to determine adverse claims under sections 5904-5913, Rev. Codes 1899, as amended by chapter 5, p. 9, Laws 1901. This was conceded by the appellant until the first opinion was handed down in this case. The appellant then petitioned for a rehearing, claiming, among other things, that the action was not one to determine adverse claims, as it was assumed to be in the first opinion. Further consideration of the case on rehearing has served to confirm me in the conviction that the first opinion was right on this question, as well as on all the questions involved. This dissent will therefore be largely a reiteration of the proposition upon which we all then agreed.

The complaint, although otherwise in statutory form, unnecessarily disclosed that defendants claimed to have a lien on the land by virtue of the mortgage in question; but the complaint did not admit that it was then or originally a valid lien. The prayer for relief was that prescribed by the statute, to the effect that the defendants set forth their adverse claims, whatever they were, to the end that their validity be determined, and plaintiffs' title

be quieted. The defendants answered, admitting that the only adverse claim they had was the mortgage referred to in the complaint, and alleged that it was a valid lien in their favor. They included a counterclaim in their answer, praying that the plaintiff's title (which it averred was based on a void tax deed) should be adjudged void, and that the defendants' mortgage be adjudged a valid lien, but did not pray for foreclosure. The unnecessary allegation in the complaint as to what plaintiff believed was the nature of defendants' adverse claim did not change the nature of the action. Blakemore v. Roberts, 12 N. D. 394, 96 N. W. 1029. It was utterly insufficient as a bill in equity to cancel a mortgage, and it was not treated as such by the parties. The defendants were not by the allegations of the complaint limited to the litigation of the particular adverse claim mentioned in the complaint. Nor did the reference to the mortgage relieve the defendants of the necessity of pleading any adverse claim, which they might have by mortgage or otherwise, under penalty of being barred as to such undisclosed claim, if any existed. The form of the answer shows unequivocally that the defendants construed the complaint to be one in an action to determine adverse claims.

This action is one provided by statute, whereby the plaintiff can require all adverse claimants to come into court and establish, if they can, that they have some valid adverse claim, by lien or otherwise, upon the premises in question. The only fact necessary for the plaintiff to prove or plead, in the first instance, is that he has some estate in or lien upon the property. In other words, he is required to show, if the fact is denied, that he has the right to maintain such an action. The defendant must then establish prima facie the adverse claim which he pleads. Now, it seems to me that it is merely to state a truism to say that, if the adverse claim pleaded is a lien, it must be an enforceable one—a lien which the defendant can use as a means of compelling payment of the debt it secures in some appropriate action or proceeding instituted for that purpose. A lien which exists only on paper, but which cannot be enforced, is for all practical purposes no lien. It is, like a shadow, without substance. As said by Chief Justice Corliss in Wells County v. McHenry, 7 N. D. 246, at page 265, 74 N. W. 241, at page 248: "A lien that cannot be enforced is no lien at all." In Burwell v Tullis, 12 Minn. 572 (Gil. 486), a case very similar to this, Chief Justice

Wilson said, speaking for the court: "The difference between divesting the lien and forever denying a remedy to enforce it is a mere verbal distinction without any practical or real difference. The legislative intent and practical operation of the law would be the same in both cases; the denial of the remedy to enforce the lien being the extinguishment of the lien itself." The majority opinion postulates that all remedies to enforce this mortgage are barred by the statute of limitations. We all agree that the remedy by action is barred; and the Chief Justice and myself agree that this defense to an action to foreclose is available as a ground for an ex parte injunctional order against the exercise of the power of sale under section 5845, Rev. Codes 1899. Our reasons for this conclusion can be more appropriately stated in the accompanying case of Scott v. District Court (just decided) 107 N. W. 61.

It is true that the statute operates on the remedy only, and it is often said that the obligation remains, even though the remedies are barred. The obligation remains only in a limited sense. Although all remedies are barred, the obligation, though outlawed, is a good and sufficient consideration to support a new promise; and an action to enforce it may also be maintained after the time limited by the statute, unless the defendant pleads the statute in bar. The rule that the statute is tolled by a new promise and is waived by the defendant's failure to avail himself of it is a logical result of the theory upon which such statutes are based. The reason for the enactment of statutes of limitations is that it is contrary to public policy to permit the litigation of stale demands. The object of the statute is to compel claimants to enforce their claims while the transaction out of which the claim arose is fresh, and while the best evidence of the facts involved is available. The courts are forbidden to undertake the investigation and determination of the merits of a cause of action after the time limited, because after so long a time it is presumed that the evidence in relation to the transaction is not reliable. There is no ground for this presumption, however, when the defendant has acknowledged the validity of the claim by a new promise in writing, or a partial payment within a less period of time before commencement of the action than is required to raise the presumption. So, also, the defendant's failure to rely on the statute is a waiver of the defense, because such failure to urge it is

taken as an acknowledgment that reliable evidence as to the merits
is still available. But in the absence of such new promise evi-
dence by a writing or partial payment, and in the absence of a
waiver of the defense, the court is forbidden to inquire into the
merits of the claim. This being so, it is self-evident  that  the
court cannot presume that the outlawed claim is valid. There is
no  presumption for or against the validity of the claim. The
court is forbidden to hear proof or inquire as to the validity or
invalidity of the demand.

Right here, it seems to me, lies the fallacy of the majority opin-
ion. They assume that the mortgage is valid. It is only by making
that assumption that it is possible to assert that equity requires
the payment of it as a condition precedent to equitable relief. As
stated above, this assumption is unwarranted, and consequently the
entire argument of the majority falls to the ground. If the mort-
gage is presumptively valid, as asserted by my Brethren, it seems
to me that consistency requires that the presumption should be car-
ried to its logical conclusion. If the mortgage is valid, the ap-
pellants are entitled to a decree establishing and confirming their
lien, and also to a decree declaring Tracy's tax deed invalid, instead
of being dismissed from the court without relief if the plaintiff
does not pay. Again, if the mortgage is presumptively valid, then
clearly it is not a conclusive presumption. The defendant should
be permitted to show the contrary. But that would involve a trial
of the merits. My Brethren seem to agree that such a trial is
not permissible. The result, then, is that the mortgage is pre-
sumed to be valid, and the respondent is denied an opportunity of
showing the contrary. In other words, the presumption is in ef-
fect conclusive, after the limitation statute has barred all remedies,
unless the respondents forego their statutory defense. The respond-
ents must choose between the horns of a dilemma. They must either
forego the statutory right to decline to litigate an outlawed mort-
gage, or they must pay it in order to remove it as a cloud on
their title. Viewed from a practical standpoint, the rule as estab-
lished by the majority seems to me absurd. The mortgage is an
unenforceable one, because public policy will not permit any in-
quiry into the merits of the claim. It must remain, however, as
an eternal cloud on the title, unless the owner of the property will
consent to litigate the merits notwithstanding the statute, or pay
what the mortgagee sees fit to demand. Such was the conclusion

reached by the Supreme Court of Indiana in Cassell v. Lowry, 72 N. E. 640, which, by the way, is the only case among those cited which supports the majority opinion. There is no parallel between a suit to determine adverse claims and an ordinary suit in equity to cancel a mortgage or lien for specific reasons. The pleading in such a case necessarily admits that the lien or other adverse claim attacked is valid, unless invalid for the reasons pleaded; and the attacking party assumes the burden of establishing the specific invalidity alleged.

Two reasons are given for declining to afford equitable relief from on outlawed mortgage in that form of action: First, it is said the statute of limitations is an odious and inequitable defense; second, it is said that the statutory bar is "a shield and not a sword," and hence must be relied upon as a defense and not as a ground for affirmative relief. Neither of these reasons is applicable in this state to an action to determine adverse claims. The idea once prevailed that the statute of limitations was not a meritorious defense, but that idea has long since been abandoned by nearly all courts, and has been expressly repudiated in this state. Wheeler v. Castor, 11 N. D. 347, 92 N. W. 381, 61 L. R. A. 746. A court of equity is as much bound to observe and enforce the statute as a court of law. The reason for prohibiting litigation of stale demands is just as cogent in one court as in the other. Moreover, to exact payment of an outlawed mortgage on the theory that he who seeks equity must do equity necessarily postulates that the mortgage is presumptively valid. As already stated, this assumption is unwarranted. The second reason for declining relief in such cases—that the statute is a shield and not a sword—may be sound if properly applied; but it is not applicable to this form of action. It goes only to the form of the remedy, not to the substantial right. The statute is a protection against the litigation of stale demands, and hence the statute requires the party relying on it to plead the statute. It is well settled that this provision of the statute means that the statute of limitations must be pleaded as a defense if there is an opportunity to do so. If an outlawed demand is pleaded in an answer, then the statute must be pleaded in the reply; but, if the rules of procedure do not provide for a reply, then the statutory bar need not be pleaded, but may be relied upon and urged at the trial. Enc. of Pl. & Pr. vol. 13, p. 187; Dreutzer v. Baker, 60 Wis. 179, 18 N. W. 776; Cur-

tiss v. Sprague, 49 Cal. 301. Under sections 5901 and 5911, Rev. Codes 1899, as amended by chapter 5, p. 9, Laws 1901, no reply was required in this case. In this action the defendants were cited to appear and establish whatever adverse claim they might have. They appeared and sought to have their alleged mortgage established as a valid adverse claim, and also sought to have the tax deed of plaintiff Tracy declared void. They had no right to this relief unless they could estblish an enforceable mortgage. The plaintiff had the right given them by statute to defeat the mortgage by urging the limitation statute as a bar to any inquiry into the merits of the adverse claim. They did not thereby admit the validity of the mortgage. They merely availed themselves of the statute as a shield against any inquiry into the merits of the adverse claim.

I said above that the Indiana case (Cassell v. Lowry [Ind. Sup.] 72 N. E. 640) was the only case in point cited in the majority opinion. It will be found upon examination that all the cases cited (except the Indiana case and the Califorina cases) were suits where the lien was attacked for specific reasons, and hence, as stated above, the attacking party admitted the validity of the adverse claim unless he established the specific invalidity alleged. In such cases, of course, the plaintiff must fail, because he cannot use the statute of limitations as a sword. Some of the cases from California were actions to determine adverse claims. In those cases, however, the defendant answered and alleged title in himself by virtue of apparently absolute deeds. The plaintiff, claiming that these deeds were in fact mortgages, had the burden of showing that these apparently absolute deeds were in fact given as security; and hence he could not be relieved of them except by performing the conditions of the contract pursuant to which they were given. I fully agree with the conclusions announced in those cases. They are clearly distinguishable from the case at bar. In those cases the plaintiff had the burden of showing that the deed was not what it purported to be, and, in order to be relieved of the deed, he must redeem the mortgage which his own proof showed the deed to be. In other words, he was in the same position he would have been in if he had brought an ordinary suit in equity to cancel the deeds. In this case the plaintiff simply asserts his statutory right to decline to litigate the merits of an outlawed lien pleaded by defendant, who has the burden of proving its validity

and the amount due thereon. It is doubtful if a plaintiff could under the California statute get relief from a mere lien in this form of action. The California statute relating to such an action was similar in terms to the statute of this state when Power v. Bowdle, 3 N. D. 107, 54 N. W. 404, 21 L. R. A. 328, 44 Am. St. Rep. 511. was decided, wherein it was held that a lien was not an adverse estate or interest, and hence a lien would not be barred by a judgment for plaintiff in that form of action. Our statute was amended after the decision in Power v. Bowdle so as to include liens.

I think the majority opinion is unsound in principle and violates both the letter and spirit of the statute of limitations, and is supported by no authority except the Indiana case. Even in that case the court said (72 N. E. 641): "It must be understood that our decision is limited to the right of a debtor himself to have his title to land quieted where it appears that the purchase money is unpaid." Thus the court which rendered that decision expressly declare that it should not be taken as a precedent in a case like the one at bar, when the plaintiff is not the debtor. I confess, however, that I do not see any good ground for such a distinction. It seems to me that my associates have not only misapplied the maxim that "he who seeks equity must do equity," but have overlooked, and consequently have failed to give effect to those two other equally important maxims, "Equity aids the vigilant, not those who sleep on their rights," and "Equity follows the law." It must be borne in mind that modern statutes of limitation do not create any presumption of payment, satisfaction or other extinguishment of the claim in litigation, and that the statute is equally binding on a court of equity as on a court of law. The old controversy as to whether equity applied the principles of the statute of limitation by analogy or in obedience to the statutory rule was settled long ago in favor of the latter view. Angell on Limitations, sections 25-27. As already shown, there is no presumption of extinguishment by reason of the expiration of the limitation period. Proof of nonpayment, therefore, is no reason for declining to apply the law. Quite the contrary. Nonpayment simply shows nonacknowledgement. Relief is barred by the statute, because it is against public policy to try the merits of a stale demand. This is the reason why courts of equity would not entertain a stale claim, even though not within the letter of the statute. The legislature having fixed the time required to constitute a bar by reason of the claimant's neg-

lect to enforce his rights, it is the plain duty of a court of equity to not only enforce the policy of the statute, coinciding as it does with equitable principles, but to accept the statutory limitation period as the controlling one in equity. This is so whether the limitation statute in terms applies to equity courts or not, because "equity follows the law." Angell on Liens, sections 25-27; Pomeroy's Eq. Jur. (3d Ed.) vol. 1, section 419. Manifestly the same principles apply, whether the stale claim is one asserted by the plaintiff or defendant. "When the reason is the same, the rule should be the same." Rev. Codes 1899, section 5073.

I further maintain that this decision violates the spirit and intent of section 5845, Rev. Codes 1899. It is plain that this statute was enacted for the purpose of placing the remedy of foreclosure under the power on the same footing as an action to foreclose, that is, to enable the mortgagor to summarily require the foreclosure to be made by action, if there is any dispute as to the validity of the mortgage, or the amount due on it, and also to enable the mortgagor to prevent a sale under the power, if a foreclosure by action could not be had. The policy of the law plainly was to require all disputed questions concerning the mortgage, or the amount due thereon, to be litigated in an action to foreclose, instead of compelling resort to the more circuitous suit in equity to enjoin the sale under the power. To permit the mortgagee to establish the validity and amount of his mortgage in this form of action, after the mortgagee by his own laches has lost the right to enforce his mortgage by action or otherwise, it seems to me, is a flagrant disregard of the will of the legislature. If the mortgagee is forbidden to enforce his mortgage because it is contrary to public policy to permit the merits of so stale a claim to be tried in an action to foreclose, why should that reason by ignored in this action? How can the court consistently adjudge valid a mortgage which cannot be enforced, and as to the merits of which it is forbidden to inquire, unless the mortgagor waives the statutory bar? The reasons which forbid the litigation of an outlawed mortgage are just as true in this action as in any other, and a mortgage containing a power of sale is just as much within the reason as a mortgage not containing that stipulation.

It may be urged that the remedy under the power is not barred until an injunction under section 5845 has been granted. The same argument would apply with equal force in the case of an

outlawed mortgage having no power of sale. The only remedy on such a mortgage would be by action. In either case the statute of limitations, to be available, must be asserted by the party who desires its protection. Failure to plead it, or assert it in some other appropriate manner, is a waiver of its protection. So a failure to obtain an injunction under ˉsection 5845 would be a waiver of the objection. ˙ If the argument were sound, it would logically follow that a judgment dismissing an action to foreclose on the ground that the action was barred by the statute would leave the mortgagees free to foreclose under the power, and hence such a judgment would not relieve the premises of the lien. I hardly think any one would seriously assert such a proposition. It seems clear to me that where, as in this case, the defendant is seeking to establish a lien, which is confessedly unenforceable unless the plaintiffs waive their statutory defense, it would be absurd to recognize and establish its validity, when the plaintiffs have unequivocally asserted their intention to avail themselves of the statute in bar of any attempt to enforce it. Suppose these mortgagees had brought this action to determine adverse claims, as our statute permits mortgagees to do; would it be contended that the defendant landowners could not have defeated the action by pleading and proving that the mortgage was outlawed? Shall the rule be different simply because the mortgagee is defendant, instead of plaintiff? In either case the mortgagee has the burden of proving his lien. The issues are identical, and so, also, is the relief he is entitled to. I can see no reason for attributing to the outlawed lien any greater potency, or viewing it with more tenderness, when the mortgagee, as plaintiff, claims a right under it, than when he asserts the same right as a defendant? My views are supported by Selby v. Sanford (Kan. App.) 54 Pac. 17, and Archambau v. Green, 21 Minn. 520.

(107 N. W. 68.)