## State Line & Sullivan R. R. Co.'s Taxation.

*Taxation—Coal lands—Appraisement—Foot acres standard—Act of April 19, 1889, P. L. 37.*

1. While the foot acre is not the usual standard employed in arriving at the value of lands for the purpose of assessment, it will be accepted where the parties have agreed to it, or do not object to its use.

2. The parties on appeal from a tax assessment of coal lands by the board of revision, are not bound to adopt the method used by the board; any fair reasonable basis will be sufficient, if the result enlightens the court as to the value required by law.

3. The board of revision must inquire whether the assessment has been made according to law, and the property to be valued has been so valued at a price or sum not less than it would bring at a public sale after due notice. If the board omits by mistake a part of the acreage, the court of common pleas, on appeal, has jurisdiction under the Act of April 19, 1889, P. L. 37, to add the omitted acreage. In such a case the amount is increased, but not the value.

4. It is not the policy of the law to permit persons to escape taxation through an omission by the assessor to place a property in assessment. That such result may not be accomplished, courts will give a liberal construction to those acts which tend to an equalization of the burden of taxation.

5. In making the assessment the taxing authorities may consider what has been the average yearly output of coal for several years preceding, the total amount of coal originally contained in the tract, what remains unmined at the time of the assessment, the amount of the royalties, if the property is under lease, and the number of years it will probably take to exhaust the coal. If it appears that the owners are carrying away coal which is free from taxation at the rate of thirty-two acres per year, they have nothing of which to complain.

Argued March 17, 1919. Appeal, No. 193, Jan. T., 1919, by The State Line & Sullivan Railroad Company and The Connell Anthracite Mining Co., from decree of C. P. Sullivan Co., Sept. T., 1916, No. 1, fixing value of coal lands for tax purposes in re Assessment and Valuation of Certain Lands of The State Line & Sullivan Railroad Company and The Connell Anthracite Mining

Company.    Before Stewart, Moschzisker, Frazer, Walling and Kephart, JJ.   Affirmed.

Appeal from decision of county commissioners acting as a board of revision of taxes refusing to reduce the assessment upon a number of tracts of coal lands, for the triennial assessment for the year 1916.   Before Terry, P. J.

The court entered a decree fixing the assessment at $100 per foot acre, and adding some tracts omitted by mistake by the board of revision.

The railroad company and the mining company appealed.

*Error assigned* was the decree of the court.

*E. J. Mullen,* for appellants.—The evidence does not sustain the finding of the court below that the market value of the coal on these tracks, separately assessed, is one hundred and twenty-five dollars per foot acre: Lehigh Valley Coal Co. v. Luzerne County, 255 Pa. 17; Lehigh Valley Coal Co. v. Northumberland County Commissioners, 250 Pa. 515; Baker v. Pittsburgh, etc., R. R. Co., 219 Pa. 398.

The court had no power to increase the assessed valuation of a foot acre of coal in these tracts from eighty dollars, the amount fixed by the county commissioners sitting as a board of revision and appeal, to one hundred dollars, the amount fixed by the decree.

The court below had no power or authority to raise the assessed valuation of the Samuel Carpenter and Thomas Odian warrants above the amounts fixed by the board of revision and appeal: Com. ex rel. v. Hanna, 17 D. R. 308; Lehigh & Wilkes-Barre Coal Co.'s. Assessments, 225 Pa. 272; In re Irwin Basin Coal Lands, 17 D. R. 825; Drake v. Northampton Co., 14 D. R. 688; Central Penna. Lumber Co.'s App., 232 Pa. 191.

*Rodney A. Mercur,* with him *F. W. Meylert,* County Solicitor, and *J. H. Thayer,* for appellee.—The appel-

lants challenge the power and authority of the court below to raise the assessed valuation of a tract of land above the amount fixed by the board of revision.

The appellee claims that that question has been settled in Pennsylvania Coal Company's Assessment, 257 Pa. 320.

OPINION BY MR. JUSTICE KEPHART, April 28, 1919:

This is an appeal from a final decree of the court below fixing the value of the appellants' real estate at a triennial assessment for the purpose of taxation. The lands affected lie in Sullivan County and are partly underlaid with coal. The acreage, character and quality of the coal are not here disputed, nor is the thickness of the veins. The trial judge adopted the value of the foot acre as the unit to fix the value of the land; the county commissioners, as a board of revision, used the superficial acre value as such unit. While the foot acre, as we have said in other cases, is not the usual standard employed in arriving at the value of lands for the purpose of assessment, it will be accepted where the parties have agreed to it, or do not object to its use; and, as evidence of appellants' consent, they requested the following finding of fact: "The foot acre is a fair unit of measurement, both of quantity and value, of the coal in place remaining upon these six tracts." This was affirmed.

While the record is quite voluminous, it becomes our duty to review it, to discover the errors appellants urge were made in the findings of fact and conclusions of law. The principal objection is to the value placed on the foot acre which, it is asserted, is not more than $60, while the court fixed $125 an acre; as the uniform value throughout the county was eighty per cent of the value required by law, this figure of $125 was reduced to $100 a foot acre. The evidence concerning the value of the coal land was conflicting. There had been no sales of this land in the immediate vicinity and, to arrive at what the land was worth for the purpose of assessment, it was

necessary to compare the coal fields in Sullivan County with those in Lackawanna; though not contiguous counties the coal is of the same general quality; the coal in Sullivan is not of the same grade as that in Lackawanna, and the witnesses differed as to the relative value. The court did not accept, as conclusive on the matters before it, the statements of either set of witnesses, but from all the evidence, with the returns of the board of revision and with such other matters as would bear on the question, arrived at what it considered to be a fair, proportionate value. The record does not show by a preponderance of evidence that the value was $60 per foot acre. The evidence was evenly divided between this figure and $200 and the court took a very proper view in reaching its conclusion.

Counsel also urged that the court raised the figures fixed by the board of revision on the value of a foot acre. The only evidence as to what the board of revision did with respect to the foot acre was secured from one of the commissioners. It is not convincing that any attempt was made to fix the value by that method. The returns distinctly show the superficial acre was used by the board as the unit of value. The total amount returned by it, as compared with the actual foot acres, shows this position to be entirely without foundation. The parties on appeal are not bound to adopt the method used by the board; any fair, reasonable basis will be sufficient, if the result enlightens the court as to the value required by law. But, on the appellants' own showing, there was no effort to raise the assessment above the amount returned by the board (not considering coal land omitted from assessment by mistake). As a matter of fact, the assessments were reduced on the two Epple tracts, the Heister and Tomlinson tracts. The total amount returned was $237,206, and the sum fixed by the court, including the value of the omitted acreage, was $205,160, for 2,042.62 foot acres.

No question as to raised values would be here, had it not been for the correction made by the court of certain mistakes appearing in the assessment book. It appears a part of the acreage of the appellants' land had been omitted from assessment and, when this was corrected, of course the amount was increased, but not the value. Appellants deny the power of the court to make the correction, since the Act of 1889, under which the appeal is taken, gives no such authority; but we cannot agree that this is the law. The board of revision must inquire whether the assessment has been made according to law, and if property to be valued has been valued at a price or sum not less than it would bring at a public sale after due notice. If a property has been omitted, it has not been so assessed or valued. The board could have placed the land in assessment. Section 1 of the Act of April 28, 1868, P. L. 105, gives to the assessor like authority. Upon appeal to the court of common pleas for an equitable adjustment of the assessable value of land, where the same property is involved, the Act of 1889 assuredly gives to the court power, in determining what is just and equitable, to correct an admitted mistake, by adding the omitted acreage. Had the total acreage been included in the return of the board, and the price per acre raised to equal some other assessment, it might present a different question. We need not decide the power of the court in such case, however; for here it is conceded that a certain acreage of coal land was actually omitted from assessment. It is not the policy of the law to permit persons to escape taxation through an omission by the assessor to place a property in assessment. That such result may not be accomplished, courts will give a liberal construction to those acts which tend to an equalization of the burden of taxation. When an appeal was taken, the acreage and value were open to the court's consideration. It is not similar to Williamson's Est., 153 Pa. 508, where an attempt was made by the board to increase a return that had been settled; here a part of the property,

by acres, was actually left out of assessment. The power of the court in this respect cannot be questioned.

It also appears from the evidence that mining operations started about 1903. From that year until 1916 there had been mined 2,936,133 tons of coal, or an average yearly output of 225,850 tons. There remained unmined 3,000,000 tons of coal. The tract originally contained 6,000,000 tons. This record, covering a period of thirteen years, fairly demonstrates what may be expected in the future. It furnishes a very fair basis for calculating with reasonable certainty the time within which the coal will be mined to exhaustion. Considering all uncertainties, this should be within the next thirteen years. If there should be some calamity in the future that would prevent it, there is no doubt that proper allowance in tax adjustments will be made by the county commissioners for a sufficient cause shown. But, inasmuch as fixing a value for the purpose of assessments is a matter of present indication, such possibilities cannot be taken into account. The property is operated on a lease which pays a royalty of nineteen cents per ton, so that within the next thirteen years, with the same average yearly output as in the past thirteen years, this company will receive in the neighborhood of $575,000. If we were to estimate the present worth of that sum, even if it was to be withheld until the end of the period, it would be approximately $325,000; but as it is paid yearly, according to the amount mined, it would exceed this sum. The court below fixed $205,160 as the assessable value, which is subject each year to a reduction of from eight to twelve per cent, according to the amount mined during the preceding year. In the last three years the mining exceeded the yearly average for the thirteen years. The appellants are carrying away coal which is free from taxation at the rate of thirty-two acres per year. We do not see how appellants have been injured in the slightest by the amount fixed; on the contrary, it looks like a most favorable assessment.

We are satisfied under the law and the evidence the court below did not err in its conclusions and the decree is affirmed, at the cost of appellants.