**MUELLER v. MERCER COUNTY et al.**

No. 7377.

Supreme Court of North Dakota.

Oct. 30, 1953.

Rehearing Denied Nov. 19, 1953.

T. A. Sailer, State's Atty., John A. Richardson, Asst. State's Atty., Hazen, and C. E. Brace, Asst. Atty. Gen., for appellant.

W. H. Esterly, Beulah, for respondent.

GRIMSON, Judge.

Plaintiff brought this action to quiet title to the South twenty-five (25) feet of Lot Five (5) and all of Lot Six (6) in Block Forty-five (45) of the City of Hazen, County of Mercer and State of North Dakota. The complaint is in the statutory form. Plaintiff is the owner of said lots and her residence is located thereon. Defendant, Mercer County, claims a lien on said lots for some unpaid 1947 and 1948 taxes based on the assessment by the county auditor of the residence on said lots claimed to have been omitted by the assessor. The plaintiff seeks to set aside the lien of said taxes. No other defendant answered.

At the close of the case defendant moved for a dismissal on the ground "That the plaintiff is attempting to invoke equity powers where they have an adequate remedy at law. In view of that the court does not have jurisdiction." The motion was denied. The court then found for the plaintiff quieting title in her and setting aside defendant's tax lien. Defendant appeals and asks for a trial de novo.

Defendant contends, first, that plaintiff had a complete remedy at law by appeal from the decision of the board of county commissioners, reviewing and equalizing and confirming the assessment of said residence by the county auditor, and had no right, therefore, to come into a court of equity to quiet title against the lien of these taxes.

Granting that the plaintiff had a right to appeal from any decision of the board of county commissioners, Sec. 11–1139, NDRC 1943, the question is whether that bars the plaintiff from the use of the statutory action to quiet title.

Under the common law resort was had to the chancery courts to avoid multiplicity of suits and to remove clouds upon title in order to prevent future litigation. The grounds upon which the chancery courts obtained jurisdiction were the equitable considerations that the prevention of litigation and the protection of the true title and pos-

session were promotive of right and justice. This procedure developed into the statutory action to quiet title. Such statutes greatly enlarged the jurisdiction of the equity courts over that possessed by the chancery courts.

"In many of the states statutes have been enacted which greatly enlarge the jurisdiction of the courts in actions to remove cloud or quiet title, and generally permit actions to be brought to determine any adverse claim, interest, or estate in lands. Such statutes are designed to afford an easy and expeditious mode of quieting title to real estate. This result is secured by enlarging the power of the court to determine adverse claims to land and to quiet the title thereto in cases where, by the strict rules of a court of equity, suit is not maintainable." 44 Am.Jur., Quieting Title, Sec. 5, p. 6.

"In many jurisdictions statutes have been enacted authorizing actions to be maintained for the determination of adverse claims and to quiet title. An action under statute to compel the determination of an adverse claim to realty is in its nature one to quiet plaintiff's title to the property and to remove any cloud thereon. The action may be maintained independently of the common-law right to remove a cloud on the title by a bill in equity * * *." 74 C.J.S. Quieting Title, § 6, p. 14. See also Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351; McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 51 A.L. R. 743.

In Quintana v. Vigil, 46 N.M. 200, 125 P.2d 711, 715, it is said:

"Equity has an enlarged jurisdiction by virtue of our statute to try a suit to quiet title even though admittedly there is an adequate remedy at law * * *."

A New Mexico statute, Sec. 4387, N.M. Statutes Codification 1915, p. 1258 reading: "An action to determine and quiet the title of real property may be brought by any one having or claiming an interest therein whether in or out of possession of the same, against any person claiming title thereto", has been held to enlarge the jurisdiction of equity and authorize suits to quiet title whether there is adequate remedy at law or not. Knaebel v. Escudero, 32 N.M. 311, 255 P. 633.

Thus is indicated by the courts the wide range of jurisdiction given to the courts in the statutory action for determining adverse claims and removing clouds on titles to real estate.

Our original statute for determining adverse claims was Sec. 635, Chapter 29, Rev. Codes, Dakota 1877, p. 584. It was entitled "Actions to Determine Conflicting Claims to Real Property" and provided: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim." This statute was amended and broadened by Section 1, Chapter 5, NDSL 1901 and is now embodied in Sec. 32-1701, NDRC 1943, reading as follows:

"An action may be maintained by any person having an estate or an interest in, or lien or encumbrance upon, real property, whether in or out of possession thereof and whether such property is vacant or unoccupied, against any person claiming an estate or interest in, or lien or encumbrance upon, the same, for the purpose of determining such adverse estate, interest, lien, or encumbrance."

This court has held that while the action is in the nature of an equitable action it should be considered as strictly a statutory action to determine adverse claims. Tracy v. Wheeler, 15 N.D. 248, 107 N.W. 68, 69, 6 L.R.A., N.S., 516.

■ In Shuttuck v. Smith, 6 N.D. 56, 69 N.W. 5, we hold that an action to determine adverse claims under this statute is a procedure independent of the common-law right to remove a cloud from the title by an ordinary action in equity.

In Sexton v. Sutherland, 37 N.D. 500, 164 N.W. 278, 280, we say:

"The statutory action to determine adverse claims was evidently designed as a substitute for the equitable action to quiet title and the common-law action of ejectment; but it is broader and more comprehensive than either of those actions."

That the courts under this statute have jurisdiction to remove clouds arising from void taxation is held in many cases. 44 Am. Jur., Quieting Title, Sec. 12, p. 12. In Penton v. Brown-Crummer Inv. Co., 222 Ala. 155, 131 So. 14, 16, it is said:

"It is well settled that courts of equity have jurisdiction and will intervene, at the insistence of the owner of real estate, to remove a cloud on his title arising from a void assessment for taxes or public improvement schemes, where the invalidity does not appear on the face of the proceedings, and extraneous evidence is required to develop the invalidity." See also 4 Dil. Municipal Corp. (5th Ed.) Sec. 1590; 1 Pom.Eq.Juris.Secs. 259–270; High on Inj. Secs. 367, 368; Heywood v. City of Buffalo, 14 N.Y. 534; Ewing v. City of St. Louis, 5 Wall., U.S. 413, 18 L.Ed. 657.

In O'Neil v. Tyler, 3 N.D. 47, 53 N.W. 434, page 439, this court said:

"Plaintiff being in possession, and a cloud being cast upon his title by the tax deeds, an action would lie in equity to remove the cloud, and no court other than a court of equity could remove the cloud by a decree. * * * (Citations.)" See also Marshall Wells Co. v. Foster County, 59 N.D. 599, 231 N. W. 542; Northern Pacific Railway Co. v. Morton County, 32 N.D. 627, 156 N.W. 226, L.R.A.1916E, 404; Shuttuck v. Smith, 6 N.D. 56, 69 N.W. 5; Northwestern Improvement Co. v. Morton County, 78 N.D. 29, 47 N.W.2d 543.

By common consent that has been the practical interpretation given our statute by counsel and this court in the many actions to quiet title against clouds caused by allegedly void assessments. In many of those cases the question raised in this case of an appeal from the board of county commissioners when sitting as a Board of Review for the equalization of assessments has existed. The court has taken unchallenged jurisdiction irrespective thereof.

 As thus construed the action to quiet title becomes purely a creation of statute and affords relief within the scope prescribed by the statute. The scope of that relief is not diminished by the fact that other relief may be available in the form of an appeal from administrative action. The tax involved here constitutes a cloud on plaintiff's title and its validity may be challenged in an action to determine adverse claims even though she had a right to appeal from the determination of the taxing authorities under the provisions of Sec. 11–1141, NDRC 1943. The motion for a dismissal was properly denied.

The only issue on the merits of the case is whether the county auditor had authority to assess the residence involved in this action as omitted property. The district court held he did not.

Sec. 57–1401, NDRC 1943, under which the auditor acted, reads as follows:

"Whenever the county auditor shall discover that:

"1. Taxable real or personal property has been *omitted in whole or in part* in the assessment of any year or years; or

"2. * * *

"3. * * *

"4. * * *

he shall proceed to correct the assessment books in accordance with the facts in the case and to correct such error or omission in assessment, and shall add such omitted property and assess it at its true and full value, and if a building or other structure, as-

sessed as real estate in the assessment thereof, is described as though situated upon a lot or tract of land other than that upon which it in fact is situated, the auditor shall correct the description and add the assessment thereof to the assessment of the lot upon which it actually is located, if the rights of a purchaser for value without actual or constructive notice of such error or omission shall not be prejudiced by such correction, addition, or assessment." (Emphasis ours.)

It is conceded that the procedure of the auditor was in accordance with the statute. The only issue raised is whether the residence in question was "omitted" property.

Sec. 57–0227, NDRC 1943, reads in part: " * * * In assessing any tract, or lot of real property, there shall be determined the value of the land, exclusive of improvements, and the value of all taxable improvements and structures thereon, and the aggregate value of the property, including all taxable structures and other improvements".

In accordance with that statute the 1947 assessment book for Hazen City, Mercer County, provided separate columns for listing the names of the owners and for description of the property. Then follow separate columns for the assessed valuation of the "lots and lands," of the "residential structures" and of the "total assessor's value." In this book the assessor after the plaintiff's name and description of her lots, inserted in the column for "lots and lands," the sum of $150. No entry was made in the column for valuation of the residential structures. In the column for total assessor's value, $150 was again inserted and was the amount used in making the tax levy. The same record was made in the assessment book for 1948. The assessor made no valuation of the residence on those lots during those two years. The testimony shows that the residence was separately valued by the assessor in 1946 and 1949.

In 1952 it appears that this discrepancy came to the attention of the county auditor.

He then inserted in both the 1947 and 1948 assessment books the sum of $2,575 in the column for the valuation of "residential structures" with the notation, "Entered as omitted assessment." This was done after proper notice and hearing had been given the plaintiff and over her protest. Those assessments were reviewed, equalized and confirmed by the county commissioners. The resulting tax amounted to $129 for 1947 and $121.38 for 1948. It is the tax lien resulting from those assessments which the plaintiff is trying to have set aside in this lawsuit. The taxes levied on the $150 valuation in 1947 and 1948 were paid.

■■■ The burden of proof is on the plaintiff to show that the acts of the auditor and board of county commissioners in making this assessment are invalid. The courts will not interfere in tax matters unless clear invalidity is shown. In Shuttuck v. Smith, 6 N.D. 56, 61, 69 N.W. 5, 7, this court quotes what was said in Farrington v. New England Investment Co., 1 N.D. 102, 109, 45 N.W. 191: " 'Respondent attacks the validity of the tax, and the burden is upon him to establish its invalidity * * *. The presumption is that the tax is valid, and this presumption necessarily extends to every act upon which the tax in any measure depends.' "

■■■ In re State Line & Sullivan R. Co.'s Taxation, 264 Pa. 489, 107 A. 860, the Pennsylvania court says:

"It is not the policy of the law to permit persons to escape taxation through an omission by the assessor to place property in assessment, and, that such result may not be accomplished, courts will give a liberal construction to those acts which tend to equalization of the burden of taxation."

In Reynolds v. Bowen, 138 Ind. 434, 36 N. E. 756, 758, 37 N.E. 962, the court lays down this principle:

"The power to assess is a summary power, and to secure uniform and just taxation, and protect the revenues of the state, both as to unscrupulous and

dishonest evasion of the law, and also in the interests of honest taxpayers, it is necessary that assessment statutes should be liberally interpreted in aid of the taxing power."

Counsel for the plaintiff contends that the valuation of $150 assessed against the lots must be construed as including the valuation of the residence, which under Sec. 57-0204, NDRC 1943 is a part of the real estate; that the result is merely an undervaluation which the auditor had no authority to raise.

He cites in support of his contention the case of Marshall Wells Co. v. Foster County, 59 N.D. 599, 231 N.W. 542. In that case a store building was located on Lots 7 and 8 in Block 4 of the Village of Mc-Henry, Foster County. By mistake that building had been assessed upon Lot 5 in said block for the years from 1920 to 1924 inclusive. When the auditor noticed the error he proceeded to assess this store building against Lots 7 and 8 in accordance with Chapter 198, S.L.1925 which provided for the assessment of omitted property and is now Sec. 57-1401, NDRC 1943. The board of county commissioners reviewed and equalized the assessment made by the county auditor and instructed the auditor to cancel excessive taxes on Lot 5. The plaintiff, the owner of said lots brought an action to quiet its title against the taxes so levied. On appeal from an order of the district court overruling a demurrer this court reversed that order and held that the county auditor's "authority is expressly limited to omitted property, and does not include the power to revalue property which has been listed and assessed by the assessor." And while it held Lots 7 and 8 had been so listed and assessed, the court says: "It is also clear that the buildings on lots 7 and 8 were assessed against lot 5, so that none of the property was actually omitted in the assessment for any of the years involved." In that regard the facts in the Marshall Wells Co. case differ from the case at bar. In that case the building was not omitted from the assessment rolls but was actually assessed. In the case at bar the building was not assessed at all.

The next session of the legislature following the decision of this court in Marshall Wells Co. v. Foster County, amended Chapter 198, S.L.1925, by authorizing the county auditor in case of mistakes of that kind to add the valuation of the building, which had been assessed against the wrong lot, to the assessment of the lot upon which it was actually located, in cases where innocent purchasers were not affected. That rather indicates that the legislature intended that buildings could be considered as omitted property. In commenting on this change this court in the case of Golden Valley County v. Greengard's Estate, 69 N.D. 171, 284 N.W. 423, 427, said:

"In Marshall Wells Company v. Foster County, supra, this Court said that the authority which the statute conferred upon the County Auditor and the County Commissioners 'is expressly limited to *omitted* property, and does not include the power to re-value property which has been listed and assessed by the assessor.' Chapter 280 Laws 1931, did not in any manner change this rule, but recognized it, and retained it in force, *except insofar as it prevented assessment of a building or structure that had been omitted in fixing the value of real estate."* (Emphasis ours.)

Considering the facts in the Marshall Wells Co. case and the 1931 amendment to Chapter 198, S.L.1925, the decision in that case cannot be considered as authority for plaintiff's contentions in the case at bar.

Our Sec. 32-1701, NDRC 1943, was again before this court in the case of Golden Valley County v. Greengard's Estate, supra. In that case the owner had reported to the assessor stock and fixtures in his store of the value of $7,068. On that valuation taxes were duly levied and paid. It was claimed by the auditor that the actual valuation of the property in the store was more than twice what had been reported by the owner and he proceeded to enter in the assessment roll the valuation that he claims should have been assessed. A tax was then levied on the excess of that valuation over

that made by the owner as omitted property. It does not appear, however, that any specific property had been listed as omitted. The majority of this court held that the auditor's action in that case amounted only to re-valuation of the property already listed and assessed.

Some Indiana cases, decided under a statute practically identical with ours, are cited in support of plaintiff's contention. In Florer v. Sherwood, 128 Ind. 495, 28 N.E. 71, 72, personal property consisting of moneys and credits was assessed. It was claimed the valuation was too low. The auditor increased the valuation without any specific listing of the property. The Indiana Court held: "To justify an assessment by the auditor upon property of that character, he must know of specific loans and of specific credits which have been omitted, and upon which valuations may be placed." In the case of Woll v. Thomas, 1 Ind.App. 232, 27 N.E. 578, 580, the property involved was personal property with no specific identification. The court said: "Our conclusion is that the auditor had no right * * * to assess any property as omitted, except distinct, definite, and recognizable articles, which had not been listed and properly appraised for taxation by the assessor." In the case of Williams v. Segur, 106 Ind. 368, 1 N.E. 707, the property attempted to be assessed as omitted consisted of notes, mortgages, choses in action and moneys without specific identification. That was also the situation in the case of Florer v. Sheridan, 137 Ind. 28, 36 N.E. 365, 23 L.R.A. 278. The facts in such cases differentiate them from the case at bar.

The case of Davidson v. Franklin Ave. Inv. Co., 129 Minn. 87, 151 N.W. 537, is cited for plaintiff. In that case a four-story concrete building was added as omitted property by the county auditor to the assessment of the lot on which it stood. The court held that this building was a part of the realty and that the failure to include it in the assessment of the realty amounted merely to an under-valuation of the realty. It will be noted, however, that the Minnesota statute, G.S.1913, Sec. 1980, M.S.A. § 273.02, provided:

"If any real of personal property be omitted in the assessment of any year * * * and the property thereby escape taxation * * * the county auditor shall enter such property on the assessment and tax books for the year or years omitted".

There is no authority for assessing property omitted in part and there is no showing that separate valuation of the lots and improvements were to be made. The building was, of course, a part of the real property so that under the wording of that statute it would be included in the assessment of the lot on which it stands. Our statute, however, Sec. 57–1401, NDRC 1943, provides that when "taxable real or personal property has been omitted *in whole or in part* in the assessment of any year or years * * *." Further, our statute provides for the separate valuation of the residence and the lots the total to be levied against the real property. The authority granted the auditor under our statute is much more specific on the matter than the authority granted under the Minnesota statute.

That also is the situation in South Dakota where it was held in Palmer v. Beadle County, 70 S.D. 99, 15 N.W.2d. 6, that the treasurer was not authorized to assess a building as omitted property. The South Dakota statute, S.D.C.1939, Sec. 57.1002 reads: "When the treasurer, after the tax list is committed to him, shall ascertain that any land or other property is omitted," he reports the same to the county auditor, who if satisfied, enters the same on the assessment rolls. Again there is no authority for such action by the auditor if the property is omitted only in part.

In other states, however, even where the statute is less specific than ours, it is held that:

"Where improvements on realty were not listed and assessment was based only on value of land, improvements were 'omitted property' which could be assessed in subsequent year." People ex rel. McDonough v. Birtman Electric Co., 359 Ill. 143, 194 N.E. 282.

In that case the reasons are well stated:

"It is not disputed that in 1928 the land was improved with a building which had an assessed value of more than twice that of the land itself and that it was not listed and valued for assessment purposes. * * * It is the law that, in order to arrive at an aggregate assessment, whether of real or personal property, consideration must be given to the separate items which constitute the entity. * * * In the case of improved real estate, the entity is composed of two components, one land and the other buildings and improvements. If both are listed and valued separately for assessment purposes, the assessment cannot be reviewed in a subsequent year, but, if either the land itself or the building and improvements have been omitted, then that component part which was so omitted becomes a subject of assessment for taxation in a subsequent year." See also Union Portland Cement Co. v. Morgan County, 64 Utah 335, 230 P. 1020.

■ That reasoning is sound and applies to the case at bar. The evidence leaves no doubt that valuation of the residence was omitted by the assessor. The assessment books show it. The $150 total valuation shows it. That clearly included only the lots and not the $2,575 residence thereon. Our statute authorizes the auditor to assess property omitted in part. The statute divides real property into two parts, the land and the improvements and structures thereon. The residence was one part of the real property. It was not assessed anywhere. The plaintiff has not met his burden of showing the tax invalid. The auditor in adding the residence so omitted to the assessment rolls was doing his duty as provided by law. The taxes based on that assessment are a valid lien on the lot described.

The judgment of the district court is modified and the case is remanded for the entry of judgment in accordance herewith quieting title in the plaintiff subject to the lien of the taxes so levied.

MORRIS, C. J., and SATHRE, J., concur.

CHRISTIANSON, Judge (concurring specially).

I concur in the result reached in the opinion prepared by Judge GRIMSON but do not agree with all that is said in the opinion.

The plaintiff is the owner of a lot and a portion of an adjoining lot in the City of Hazen in Mercer County in this state on which there is a dwelling house. In assessing the property in 1947 and 1948 the value of the dwelling house was not considered but the assessment was based on the value of the land alone. Taxes were levied and extended against the lots and the plaintiff paid such taxes. Upon discovery of the fact that the dwelling had not been considered by the assessor in assessing the lots for the years 1947 and 1948 the county auditor made an assessment of said lots 7 and 8 based upon the value placed upon the dwelling, and taxes computed on such valuation at the rate prevailing in 1947 and 1948 were extended against the lots. Upon the merits, the sole question presented in this case is whether the county auditor had authority to make such assessment. I agree that the county auditor had such authority under Chapter 280, Laws 1931, which was codified and embodied in NDRC 1943, 57-14.

Real property consists not only of land, but also of that which is affixed to land, that which is incidental or appurtenant to land, and that which is immovable by law. NDRC 1943, 47-0103. A thing is deemed to be affixed to land when it is permanently resting upon it as in the case of buildings. NDRC 1943, 47-0105. Indeed, it is a general principle of law that a building permanently fixed to the freehold becomes a part of it and that prima facie a house is real estate belonging to the owner of the land on which it stands. 42 Am.Juris., Property, Sec. 18, pp. 199-200.

"Real property, for the purpose of taxation, includes the land itself, whether laid out in town lots or otherwise, and, except as otherwise provided, all buildings, structures, and improvements except plowing and trees, and all rights and privileges thereto belonging or in anywise appertaining, and all mines, minerals, and quarries in and under the same." NDRC 1943, 57–0204.

NDRC 1943, 57–0227 provides:

"All property subject to taxation based on the value thereof shall be assessed at its true and full value in money. In determining the true and full value of real and personal property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price at which said property would sell at auction, or at forced sale, or in the aggregate with all the property in the town or district, but he shall value each article or description by itself, and at such sum or price as he believes the same to be fairly worth in money. In assessing any tract, or lot of real property, there shall be determined the value of the land, exclusive of improvements, and the value of all taxable improvements and structures thereon, and the aggregate value of the property, including all taxable structures and other improvements, excluding the value of crops growing upon cultivated lands. * * *" NDRC 1943, 57–0227.

The foregoing statutory provision was enacted as a part of a comprehensive measure on Revenue and Taxation enacted by the Legislative Assembly in 1897, Laws 1897, Ch. 126, Sec. 30, and has been retained in subsequent compilations and codes without substantial change.

The law provides for boards of equalization in cities and in counties to review and equalize assessments.

NDRC 1943, Chapter 57–11 provides That the board of equalization of a city shall consist of the members of the governing body of the city, and that such board shall meet at the usual place of meeting of the governing body of the city, on the second Tuesday in June in each year. NDRC 1943, 57–1101. That the city auditor as clerk shall keep an accurate record of all changes made in valuations and of all of the proceedings and after completion of the equalization of assessments shall deliver the assessments as equalized to the county auditor of the county in which the city is situated with his certificate that the assessments are correct as equalized by the city board of equalization. NDRC 1943, 57–1102. That "at its meeting, the board of equalization shall proceed to equalize and correct the assessment roll. It may change the valuation and assessment of any real or personal property upon the roll by increasing or diminishing the assessed valuation thereof as shall be reasonable and just to render taxation uniform, except that the valuation of any property returned by the assessor shall not be increased more than twenty-five percent without first giving the owner or his agent notice of the intention of the board to increase it." NDRC 1943, 57–1103. That during the session of the board any person feeling aggrieved by anything in the assessment roll or list may apply to the board for correction of alleged errors in the list or valuation of his real or personal property and the board may correct the errors as it may deem just. NDRC 1943, 57–1104. That "the board of equalization shall place upon and add to the assessment roll any real or personal property subject to taxation which has been omitted by the owner or the assessor, and shall enter the property at a valuation which will bear an equal and just proportion of the taxation." NDRC 1943, 57–1105.

NDRC 1943, Chapter 57-12 provides: That "the board of county commissioners, at its regular meeting in July of each year, shall constitute a board of equalization of the assessments made within the county." NDRC 1943, 57–1201. That "the county

board of equalization, when equalizing individual assessments, shall observe the following rules: 1. The valuation of each tract or lot of real property which is returned below its true and full value shall be raised to the sum believed by such board to be the true and full value thereof; 2. The valuation of each tract or lot of real property which, in the opinion of the board, is returned above its true and full value shall be reduced to such sum as is believed to be the true and full value thereof; * * *." NDRC 1943, 57–1205; C.L.1913, Sec. 2138.

During the whole history of the State provision was made for the correction of errors in assessment lists and for the assessment of omitted property. In 1925 the Legislative Assembly enacted a statute for the correction of assessments and the placing of omitted property which has escaped taxation upon the tax lists and repealed all former statutes relating to such matters. Laws 1925, Chapter 198. Section 1 of that act read as follows:

"Whenever the county auditor shall discover that taxable real or personal property has been omitted in whole or in part in the assessment of any year or years, or that any person has given to the assessor a false statement of his personal property, or that the assessor has not returned the full amount of all property required to be listed in his district, or has omitted property subject to taxation, he shall proceed to correct the assessment books and add such property and assess it at its full and true value."

(The above quoted section was embodied in the Supplement to the 1913 Compiled Laws of North Dakota and appears there as Section 2304a1.)

The Court had occasion to construe the above section in Marshall Wells Co. v. Foster County, 59 N.D. 599, 231 N.W. 542, 544. The plaintiff in that case was the owner of lots 7 and 8 in Block 4 in the village of McHenry in Foster County. There was a building upon such lots.

Taxes were assessed and levied upon lots 7 and 8 for the years 1920 to 1924 inclusive but the building thereon had not been considered by the assessor in determining the value of the property, but the building had been considered and assessed as being on lot 5. The plaintiff paid all taxes that had been levied pursuant to the assessments made against lots 7 and 8 for the years 1920 to 1924 inclusive. In 1928 the county auditor proceeded to assess the building as omitted property and extend taxes against lots 7 and 8 for the years 1920 to 1924 inclusive for an additional amount based upon the value of the building. The county auditor based his authority so to do upon Chapter 198, Laws 1925. The plaintiff brought action against the county to quiet title to said lots 7 and 8. The defendant county in its answer asserted that the taxes assessed by the county auditor against lots 7 and 8 for the years 1920 to 1924 inclusive were valid and constituted valid liens against said lots 7 and 8. This Court held that the assessment made by the county auditor was without authority and that the alleged lien for the assessment made by the county auditor was wholly invalid. In the opinion in the case this Court said:

"Under this section (Sec. 1, Ch. 198, Laws 1925) the county auditor has authority to assess only any real or personal property which has been omitted in whole or in part in the assessment of any years or year, or property of which the assessor has not returned the full amount, or has omitted property subject to taxation. The property involved in this case is real estate property.

"Under section 2076, C.L.1913, 'Real property, for the purpose of taxation, includes the land itself, whether laid out in town lots or otherwise, and, except as otherwise provided, all buildings, structures and improvements.'

"It is true that, under section 2122, C.L.1913, 'In assessing any tract or lot of real property the value of the land exclusive of improvements, shall be

determined; also the value of all improvements and structures thereon, and the aggregate value of the property, including all structures and other improvements.' While the land and the buildings are valued separately the aggregate value of the land and the buildings is assessed against the land, and payment is enforced against the land by sale as provided by law. * * *

"In the case at bar, the lots and the buildings were not omitted, but were assessed, and the auditor had no power to assess them."

In a supplemental opinion on denial of the county's petition for a rehearing this Court said:

"In a petition for a rehearing counsel for respondent insists that city real estate and the buildings situated thereon are separately assessed; that the Legislature has separated them, and made the improvements personal property for the purpose of assessment. We do not so construe the law. Section 2122, Comp.Laws 1913, provides that: 'In assessing any tract or lot of real property the value of the land, exclusive of improvements, shall be determined; also the value of all improvements and structures thereon, and the aggregate value of the property, including all structures and other improvements.' In other words, the assessor, in assessing any *tract or lot of real property,* first determines the value of the land, and then the value of all the improvements, and, when he has the value of the land, and the value of the improvements on the land, he adds the two together for the aggregate value of the property, and the land is assessed for that amount. There is but one assessment, and that is a land assessment, and in no sense an assessment against personal property."

It will be noted that NDRC 1943, 57-0227, prescribes rules for the assessor in the determination of the value of both personal property and real property for the purposes of taxation. Under the express provisions of the law of this state a house permanently resting on land is real property for the purposes of taxation. As was said by this Court in Marshall Wells Co. v. Foster County, supra, "the assessor, in assessing any *tract or lot of real property,* first determines the value of the land, and then the value of all the improvements, and, when he has the value of the land, and the value of the improvements on the land, he adds the two together for the aggregate value of the property, and the land is assessed for that amount. There is but one assessment, and that is a land assessment".

That a lot and a building permanently resting thereon are assessed as realty and as an entirety, is in harmony with NDRC 1943, 57-1205, prescribing the rules for the county board of equalization, which provides that "the county board of equalization, when equalizing individual assessments, shall observe the following rules: 1. The valuation of each tract or lot of real property which is returned below its true and full value shall be raised to the sum believed by such board to be the true and full value thereof; * * *."

As has been noted, the law embodied in NDRC 1943, 57-0227, was enacted as a section of Chapter 126, Laws 1897. The same year that such law was enacted in North Dakota the Legislature of South Dakota enacted a comprehensive measure relating to assessment and taxation. Laws of South Dakota 1897, Chapter 28. Section 25 of the South Dakota law was identical with Section 30, ch. 126, Laws of North Dakota 1897, which, as said, is embodied in NDRC 1943, 57-0227. The provision of the South Dakota law was also continued in force without substantial change, and as embodied in SDC 1939, 57.-0334 provided:

"In assessing any tract or lot of real property, the value of the land, exclusive of improvements, shall be determined; also the value of all improvements and structures thereon, and the aggregate value of the property

including all structures and other improvements, excluding the value of crops growing upon cultivated lands shall then be assessed against it."

South Dakota Code of 1939, 57.1002 provided:

"If there shall be any error in the description or quantity of real property assessed or taxed such error may in like manner be corrected and the tax collected in the proper amount as determined by computation.

"When the treasurer, after the tax list is committed to him, shall ascertain that any land or other property is omitted, he shall report the fact to the county auditor, who, upon being satisfied thereof, shall enter the same upon his assessment list and assess the value, and the treasurer shall enter it upon the tax list and collect the tax as in other cases."

In Palmer v. Beadle County, 70 S.D. 99, 15 N.W.2d 6, the Supreme Court of South Dakota had occasion to construe and apply these provisions of the laws of South Dakota. The plaintiffs in that case were the owners of lots 3 and 4 in block 6 in Black and Sterling's addition to the City of Huron. "Lot 4 was occupied by a house of some size, while Lot 3 was vacant, but by the assessor's return to the assessment of Lot 4, this lot appeared to be a vacant lot, and a house standing on Lot 4 was assessed as a part of Lot 3." This condition existed for a number of years. The county treasurer discovered the omission of the building on lot 4 on the assessor's return of the assessments and notified the county auditor accordingly. Thereupon the county auditor proceeded to correct the assessment of lot 4 as made by the assessor by adding thereto an amount computed on the assessed value of the house standing on lot 4. The sole question presented for decision in that case was whether the county auditor had authority to make such assessment and include the value of the building in the amount of the valuation on which the tax was computed.

The syllabus in the case reads as follows:

"1. Where assessor undervalued lot in yearly assessments because of erroneously not including building erected thereon, county auditor was not authorized to make reassessment of lot including value of building, since lot was not 'omitted property' within meaning of statute permitting auditor to assess omitted property. SDC 57.1002.

"2. The statute providing that value of land for purpose of assessment should be determined by considering value of land and also value of structure relates only to valuation and does not make structures on real property a separate class of property for purpose of taxation. SDC 57.0334.

"3. Where in yearly assessments of lot, building erected thereon was erroneously not included, error went only to valuation, but not to 'quantity of real property assessed', and hence county auditor on notice from county treasurer was not authorized to make a reassessment by including the building in the valuation. SDC 57.1002, 57–0312, 57.0334."

In the opinion in the case the court said:

"The authority of the auditor to make new assessments is limited to cases of 'omitted property' and Lot 4 was not 'omitted property' for the assessor had assessed it every year from 1931 to 1942, inclusive. The assessor had greatly undervalued the assessment no doubt, but that did not authorize the auditor to make a reassessment of it. It is only property that the assessor has omitted that the auditor can reassess. This is the interpretation applied in a similar case under a similar statute in North Dakota, Marshall Wells Co. v. Foster County, 59 N.D. 599, 231 N.W. 542 * * *.

"Neither do we believe that there was any error in the 'quantity of real

690

property assessed' within the meaning of the first paragraph of SDC 57.1002. Lot 4 in its entirety was assessed. The assessor undervalued the lot but the entire lot was assessed; there was no error in the quantity of real property assessed, the error was in the valuation. Under the provisions of SDC 57.0312 real property, for the purpose of taxation, shall include the land and all buildings, structures and improvements thereon. The assessment of Lot 4, therefore, included the land and the structures. SDC 57.0334 relates to the method of fixing the valuation of real estate, by providing that the value should be determined by considering the value of the land and also the value of the structure. But this section relates only to valuation and does not make structures on real property a separate class of property for the purpose of taxation."

The decision of this Court in Marshall Wells Company v. Foster County was rendered in 1930. The Legislative Assembly which convened in January 1931 by Chapter 280, Laws 1931, amended and re-enacted Sec. 2304a1 Supplement to Compiled Laws of 1913, Section 1, Ch. 198, Laws 1925, to read as follows:

"Whenever the County Auditor shall discover that taxable real or personal property has been omitted in whole or in part in the assessment of any year or years or that any building or other structure has been listed and assessed against a lot or tract of land other than the true site or actual location of such building, or that any person has given the assessor a false statement of his personal property or that the assessor has not returned the full amount of all property required to be listed in his district, or has omitted property subject to taxation, he shall proceed to correct the assessment books in accordance with the facts in the case and shall correct such error or omission in assessment and shall add such omitted property and assess it at its true and full value, and if a build-

ing or other structure, assessed as real estate is in the assessment thereof, described as though situated upon a lot or tract of land other than that upon which it is in fact situated, the Auditor shall correct the description and add the assessment thereof to the assessment of the lot upon which it is actually located; provided, however, that the rights or a purchaser for value without actual or constructive notice of such error or omission shall not be prejudiced by such correction, addition or assessment."

In Section 2 of the Act, Laws 1931, chap. 280, the legislature declared the reason for the amendment then made as follows:

"Whereas the Supreme Court of North Dakota has held that a building assessed against an erroneous description does not constitute property omitted from taxation;

"Therefore, an emergency is hereby declared to exist and this Act shall take effect and be in force from and after its passage and approval."

Laws 1931, Chapter 280, was embodied in NDRC 1943, 57–1401.

It is obvious that the legislature intended to change the rule of the former statute as such statute had been construed in Marshall Wells Co. v. Foster County and intended to authorize the county auditor to make an assessment against a lot, based upon the value of a house permanently situated thereon, where the assessor in assessing the lot had failed to consider the house in fixing the valuation of the lot, although he had considered the house in fixing the value of another lot on which the house was not situated. While the language of the amendatory statute was directed particularly to the facts involved in Marshall Wells Co. v. Foster County, the object of the statute was to enlarge the authority of the county auditor and make the same applicable to a situation where the assessor in fixing the valuation of a lot has failed to consider the value of a house permanent-

ly resting thereon and has based the assessment alone on the value of the lot and consequently has undervalued the property. When the overall object of the statute and the enlargement of the authority of the county auditor are considered I believe that where, as in this case, a building permanently resting on the lot and hence a part of the realty is not considered at all by the assessor in making the assessment or by the local or county boards of equalization in equalizing the assessment that the county auditor has authority under NDRC 1943, Chapter 57–14 to correct the omission in the assessment and make an additional assessment based upon the valuation of the house as was done in this case.

BURKE, J., concurs.