## COUNTY BOARD OF EQUALIZATION OF SALT LAKE COUNTY, STATE OF UTAH, Petitioner,

v.

## STATE TAX COMMISSION OF UTAH ex rel. SUNKIST SERVICE COMPANY, Respondent.

No. 870261.

Supreme Court of Utah.

March 19, 1990.

David E. Yocom, Bill Thomas Peters, Salt Lake City, for Salt Lake County.

David L. Wilkinson, Michael F. Skolnick, Salt Lake City, for State Tax Com'n.

Philip C. Pugsley, Salt Lake City, for Sunkist Service Co.

STEWART, Justice:

This case is here on a petition filed by the Salt Lake County Board of Equalization to review an order of the Utah State Tax Commission which held that real property belonging to Sunkist Service Company was not subject to reassessment by Salt Lake County as an "escaped assessment" under Utah Code Ann. § 59–5–17 (1974),

even though a building on the real property had not been included in the assessment.

The County's 1984 assessment notice for the subject property did not show any improvements on the property. However, a building on the property was under construction and was 85 percent complete. That building was lawfully assessable in the 1984 property tax assessment. The 1984 owner of the subject property timely paid the 1984 taxes based on the underassessment. In 1985, the owner sold the property to Sunkist, and in purchasing the property, Sunkist, relying on the tax rolls, assumed that the 1984 taxes had been fully paid.

In 1985, the County discovered that the building had not been included in the 1984 tax assessment. The County then assessed additional taxes under Utah Code Ann. § 59–5–17 (1974) (presently Utah Code Ann. § 59–2–309 (Supp.1989)), which authorized counties to collect past taxes where property had escaped assessment. The additional taxes for the building amounted to $46,296.69. Sunkist protested the assessment to the State Tax Commission. The Commission ruled that the property had not escaped assessment, but had only been undervalued, and therefore could not be reassessed.

■ The issue is whether buildings not assessed in the tax assessment of the underlying land are considered to have escaped assessment or whether the entire property is considered to be undervalued. Section 59–5–17 allows the subsequent assessment of escaped property by providing:

> Any property discovered by the assessor to have escaped assessment may be assessed at any time as far back as five years prior to the time of discovery, and the assessor shall enter such assessments on the tax rolls in the hands of the county treasurer or elsewhere....

Utah Code Ann. § 59–5–17 (1974).

Our task is to define the term "escaped assessment," as used in § 59–5–17. Since this is a legal question, we give no deference to the Commission's construction of the statute. *County Bd. of Equalization of Salt Lake County v. Nupetco Assocs.,* 779 P.2d 1138, 1139 (Utah 1989); *Hurley v. Board of Review of the Indus. Comm'n,* 767 P.2d 524, 527 (Utah 1988).

Sunkist argues that the relevant taxable property is one unit of property consisting of the dependent components of land and improvements. Under this view, the entire property was undervalued and hence is not subject to reassessment. In support of this position, Sunkist asserts that land and improvements are subject to only one tax lien and are not treated by the tax laws as independent types of property. *See* Utah Code Ann. § 59–10–3 (1974) (presently § 59–2–1325 (Supp.1989)).

On the other hand, the County asserts that the land and the improvements are independent units of property and that the assessment and taxation of only one does not preclude subsequent assessment and taxation of the other as an escaped assessment. The basis of the County's argument is the language in Utah Code Ann. § 59–5–1 (Supp.1985), which required that land and improvements be separately assessed.

The question of whether unassessed improvements on assessed real property may be reassessed has been addressed in other jurisdictions. Some adopt the theory that Sunkist asserts here, that the land and the improvements thereon constitute one unit of taxable property. *State v. Mortgage–Bond Co. of New York,* 224 Ala. 406, 140 So. 365 (1932); *Westward Look Dev't Corp. v. Department of Revenue,* 138 Ariz. 88, 673 P.2d 26 (Ct.App.1983); *Whited v. Louisiana Tax Comm'n,* 178 La. 877, 152 So. 552 (1934); *Leyh v. Glass,* 508 P.2d 259 (Okla.1973). Other states adopt the County's theory that land and improvements are independent types of property for reassessment purposes. *Chew v. Board of Assessment Appeals,* 673 P.2d 1028 (Colo.Ct.App.1983); *Korash v. Mills,* 263 So.2d 579 (Fla.1972); *People ex rel. McDonough v. Birtman Electric Co.,* 359 Ill. 143, 194 N.E. 282 (1934); *Mueller v. Mercer County,* 60 N.W.2d 678 (N.D.1953). Alaska has permitted reassessment when only some of the improvements were omitted from the assessment. *Municipality of*

*Anchorage v. Alaska Distributors Co.,* 725 P.2d 692 (Alaska 1986).

The general rule has been that "where a valid assessment has been made by an assessor cognizant of the facts, undervaluation is ordinarily not a ground for another assessment." *Builders Components Supply Co. v. Cockayne,* 22 Utah 2d 172, 173–74, 450 P.2d 97, 98 (1969); *see Union Portland Cement Co. v. Morgan County,* 64 Utah 335, 230 P. 1020 (1924). The Court recently reaffirmed this principle in *County Board of Equalization of Salt Lake County v. Nupetco Associates,* 779 P.2d 1138 (Utah 1989), which held that an erroneous acreage figure on the assessment rolls resulted in an undervaluation of the property and not an escape from assessment. The Court did not allow the assessor to reassess the property in light of the correct acreage figure.

We first considered the issue of what the term "escaped assessment" means in *Union Portland Cement Co. v. Morgan County,* 64 Utah 335, 230 P. 1020 (1924). There, the taxpayer failed to include several improvements in the statement which it transmitted to the assessor, and the property was assessed based on the erroneous description of the property. After the time for making regular assessments had elapsed, the assessor discovered that certain improvements had not been included in the assessment. The Court relied on a predecessor provision to § 59–5–17 and held that the assessor could reassess the property. 64 Utah at 341–42, 230 P. at 1022–23 (citing Comp. Laws Utah § 5908 (1917) [1]).

In *Union Portland Cement,* the omission of the improvements was the fault of the taxpayer, while in the present case, the omission was the fault of the assessor. That distinction, however, is not material to the issue of whether the property had escaped assessment.

*Union Portland Cement* is not inconsistent with § 59–5–17, the escaped property statute that governs this case. Utah Code Ann. § 59–5–17 provides, "Any property discovered by the assessor to have escaped assessment may be assessed at any time as far back as five years prior to the time of discovery." The word "property" as used in § 59–5–17 was defined in § 59–3–1 (1974) (presently § 59–2–102 (Supp.1989)): "Property means property which is subject to assessment and taxation according to its value...." Improvements were independently subject to taxation and assessment as property according to the statutory definition in § 59–3–1. In 1983, § 59–5–1 provided, "Land and the improvements thereon must be separately assessed." In short, the tax statutes in effect recognized land and improvements as separate, or constituent, elements of real estate, each element being subject to assessment and taxation.

In this case, the initial assessment for 1984 had no description of the building. One having only a very general knowledge of the land would know from the face of the assessment notice that the building had not been assessed. Therefore, the building escaped assessment, and the County is not barred from assessing and taxing the building.

The arguments made by Sunkist and relied upon by the Commission are not supported by the tax statutes. Rather, the statute Sunkist cites is further evidence that land and improvements are separately taxed. *See* Utah Code Ann. § 59–10–3 (1974) (presently § 59–2–1325 (Supp.1989)). Section 59–10–3 speaks of property and improvements separately.

Sunkist argues that it is inequitable to hold it responsible for taxes which accumulated prior to its ownership of the property and which were not assessed until after ownership was transferred to it, despite the long-standing doctrine that property taxes are assessed against the property, not the property owner. Sunkist also argues that because it relied on tax rolls which showed no delinquent taxes at the time Sunkist purchased the property, the County should be estopped from collecting the escaped taxes.

**1.** Section 5908 provided, "Any property discovered by the assessor to have escaped assessment may be assessed at any time, and when so assessed shall be reported by the assessor to the auditor, and the auditor shall charge the county treasurer with the taxes on such property, and the treasurer shall give notice to the party assessed therewith."

■ But the question is not one of estoppel or perceived inequity; it is, rather, one of statutory construction. In any event, Sunkist had constructive notice that the building had not been assessed. The complete absence of any valuation for the building on the tax roll or assessment notice was clear notice to Sunkist that the building was subject to an escaped property assessment. It is not unreasonable to charge purchasers of real property with such notice as is provided by the separate listing of land and improvements on the tax rolls. Generally, if a separate assessment appears in the notice of assessment for both the land and for the improvements, a purchaser may rely on the assessment as being correct. Those assessments are not subject to correction by reassessment because they are not escaped properties. When Sunkist examined the tax rolls prior to purchase of the property, it should have noticed that no improvement was assessed and should have made appropriate inquiry. In addition to using available information, buyers and sellers can easily avoid the risk of escaped property tax liability by a contract provision or deed covenant requiring a seller to assume such liability.

■ Thus, for an improvement to qualify as an escaped property rather than an underassessed property, the tax assessment notice must not list the improvement. If the improvement is underassessed but shown on the assessment notice, the statute prohibits the reassessment of the improvement. It was on that principle that *Nupetco* was decided. 779 P.2d 1138. In *Nupetco*, an assessment was made based on 6.607 acres in the parcel rather than the 9.607 acres that were actually in the parcel. The land was described incorrectly on the tax roll, and the Court held that the property had not escaped assessment. That is not this case.

In this case, the building escaped assessment since it was not listed on the 1984 assessment notice.

Reversed.

HALL, C.J., and BENCH, Court of Appeals Judge, concur.

HOWE, Associate Chief Justice (dissenting):

I dissent. After reading and analyzing the cases on this subject, I conclude that the better-reasoned cases support the rule that where the legislature has made no provision to protect good faith purchasers of real property from liability for back assessments on omitted improvements, the court will not interpret an "omitted or escaped property" statute, such as our Utah Code Ann. § 59–5–17 (1974) (now Utah Code Ann. § 59–2–309(1) (1989 Supp.)), to allow the assessor to pick up omitted improvements—when the land on which they are affixed was on the tax rolls and the taxes originally assessed have been paid and the tax lien fully discharged. This rule was followed in *Leyh v. Glass*, 508 P.2d 259, 263 (Okla.1973), and in *Westward Look Development Corp. v. Department of Revenue*, 138 Ariz. 88, 90, 673 P.2d 26, 28 (App.1983).

In the Oklahoma case, the court correctly observed:

> In Oklahoma taxes upon real property constitute a lien upon the property [statutory citation omitted]. Parties dealing with real estate and titles thereto are charged with notice of the tax liens created by law. *Akard v. Miller*, 169 Okla. 584, 37 P.2d 961. In cases such as the present case, the tax rolls would indicate that all taxes assessed against the property and improvements had been paid for the years in question. If improvements constitute omitted property within § 2439 [authorizing county assessor to pick up escaped property], a purchaser for value might acquire the property believing that all taxes had been paid. The property might then be subjected to a lien for taxes for years prior to the date of purchase due to the fact that certain improvements had not been assessed and taxed during prior years. The fact that the legislature failed to provide any protection for subsequent purchasers indicates that the legislature did not intend to establish improvements as a separate

class of real property which could constitute omitted property within § 2439 in situations where the land itself had been assessed and taxed.

The majority cites decisions from Colorado, Florida, North Dakota, and Illinois which hold that improvements upon land may constitute escaped or omitted property even though the land itself has been assessed and taxed. *Chew v. Board of Assessment Appeals, City and County of Denver*, 673 P.2d 1028 (Colo.App.1983); *Korash v. Mills*, 263 So.2d 579 (Fla.1972); *Mueller v. Mercer County*, 60 N.W.2d 678 (N.D.1953); *People ex rel. McDonough v. Birtman Electric Co.*, 359 Ill. 143, 194 N.E. 282 (1934). However, in none of those cases had ownership of the property changed between the time of the payment of the taxes based on the original assessment and discharge of the lien and the later assessment of omitted improvements. Moreover, as observed by the Oklahoma court in *Leyh v. Glass*, 508 P.2d at 263, in the majority of those cases the court noted that the statutory scheme provided that no charge could be made for years prior to the date of ownership of the person owning the property at the time the tax liability for omitted property was ascertained. Such statutory protection exists in at least two of the states: Illinois, *People ex rel. McDonough v. Birtman Electric Co.*, 359 Ill. at 148, 194 N.E. at 284; and North Dakota, *Mueller v. Mercer County*, 60 N.W.2d at 681–82. Protection is also afforded in Kansas, *Nickelson v. Board of County Comm'rs of the County of Lyon*, 209 Kan. 53, 58, 495 P.2d 1015, 1019 (1972).

The North Dakota decision rests primarily on a statute of that state which provides for the assessment of property which has escaped "in whole or in part." 60 N.W.2d at 681–82. We have no counterpart in Utah. The North Dakota court distinguished its statute from statutes in South Dakota and Minnesota which like Utah's authorize later assessment of "any property" which has escaped earlier assessment. In those two states, improvements, *e.g.*, buildings, which were omitted may not be later assessed if the land to which they were affixed was on the tax rolls. *Palmer*

*v. Beadle County*, 70 S.D. 99, 102, 15 N.W.2d 6, 7 (1944); *Davidson v. Franklin Ave. Inv. Co.*, 129 Minn. 87, 89–90, 151 N.W. 537, 538 (1915). Since Utah's statute, section 59–2–309(1), is unlike North Dakota's, but like statutes in South Dakota and Minnesota, those cases are persuasive here. The Colorado Court of Appeals' decision in *Chew v. Board of Assessment Appeals, City and County of Denver*, 673 P.2d 1028 (Colo.App.1983), relied upon by the majority, is unpersuasive since the court only stated its conclusion. Its opinion contains no analysis of the issue.

In addition to the foregoing cases from Oklahoma, Arizona, South Dakota, and Minnesota, cases from Alabama and Louisiana support the rule that the assessor cannot make a subsequent assessment of improvements affixed to land when the land was on the tax rolls and the originally assessed taxes have been paid. *State v. Mortgage–Bond Co. of New York*, 224 Ala. 406, 408, 140 So. 365, 367 (1932); *Whited v. Louisiana Tax Comm'n*, 178 La. 877, 880, 152 So. 552, 553 (1934).

I strongly disagree with the majority opinion that

Sunkist had constructive notice that the building had not been assessed. The complete absence of any valuation for the building on the tax roll or assessment notice was clear notice to Sunkist that the building was subject to an escaped property assessment. It is not unreasonable to charge purchasers of real property with such notice as is provided by the separate listing of land and improvements on the tax rolls. Generally, if a separate assessment appears in the notice of assessment for both the land and for the improvements, a purchaser may rely on the assessment as being correct. Those assessments are not subject to correction by reassessment because they are not escaped properties. When Sunkist examined the tax rolls prior to purchase of the property, it should have noticed that no improvement was assessed and should have made appropriate inquiry. In addition to using available information, buyers and sellers can easily avoid

the risk of escaped property tax liability by a contract provision or deed covenant requiring a seller to assume such liability.

This statement is unrealistic. Sunkist did not have constructive notice that the building had not been assessed since there was nothing on the tax rolls to show that any building was on the land on January 1, 1984. Only an inquiry extrinsic to the tax rolls would have revealed that. There is not "constructive notice" when an inquiry extrinsic to the public record is necessary.

The realities of purchasing real property in this state are that the seller provides the buyer with a policy of title insurance. Since in Utah, as in Oklahoma and Arizona, property taxes are a lien against real property, the title insurer checks the records in the county treasurer's office to ascertain if there are any liens for delinquent taxes owing. If there are none, the insurer certifies to that effect. The title policy insures only against delinquent taxes which have been assessed but unpaid at the time the policy is issued. Undoubtedly in the instant case, Sunkist received such a title policy. However, if the county assessor is allowed to later make another assessment to pick up improvements which may have been omitted, a purchaser has no protection from his title insurer because those subsequent taxes had not been assessed and were not unpaid when the title policy was issued.

The majority not only requires the purchaser or the title insurer to ascertain that there were no delinquent taxes owing, but also would require the purchaser or the title insurer to examine the records in the assessor's office as to whether both land and improvements had been assessed for the past five years. It would not be enough that the parcel of real estate with its legal description was on the tax rolls for those years. It takes little imagination to foresee the following problems in that procedure.

First, it is the seller who customarily furnishes the title insurance and chooses the title insurer. It is not in his financial interest to go outside the tax records to ascertain whether there are grounds for a back assessment should the assessor discover those grounds.

Second, if the buyer must inspect the assessment records, as the majority requires, the buyer will also need to make an extrinsic inquiry whether any buildings or improvements were on the land in any of the past five years, and if a building were constructed during that period of time, what the stage of construction was on January 1 of the year following the commencement of construction. From whom does the purchaser get that information? The seller may not know if he has not owned the property the entire five years. In the instant case, the majority holds that Sunkist had "constructive notice" that the 1984 assessment was erroneous because no improvements were taxed. How was Sunkist to divine the percentage of completion of construction on January 1, 1984, almost two years before it purchased the property? Would the majority allow Sunkist to rely on the sellers' opinion or must Sunkist search out the builder? The majority places no responsibility on the assessor in this process even though Utah Code Ann. § 59-2-303(2) (1987) provides:

> Assessors shall become fully acquainted with all property in their respective counties, and, either in person or by deputy, *regularly update assessment records* in order to *annually establish* the values of the property they are required to assess.

(Italics added.) Moreover, under section 59-2-306, the assessor may require an affidavit from any person setting forth all the property owned by him or her. That apparently was not done here. Nor does the majority charge the assessor with "constructive notice" of the building permit on the public record for the new building.

Third, even if a buyer buys vacant land, the majority would charge him with the duty to ascertain by extrinsic inquiry whether at any time within the past five years there were buildings or parts of buildings on the property which were not assessed and have since been demolished.

In sum, the burden placed by the majority on purchasers of real property is fraught with mischief and very unrealistic. The buyer must now decide whether to spend the money necessary to make the inquiry extrinsic to the county tax records or whether to "take his chances." The suggestion of the majority that buyers and sellers "can easily avoid" the risk of a later assessment by providing by contract or deed covenant that the seller will assume such liability is again unsatisfactory. Once the sale has closed, the funds are disbursed to the seller, and the buyer takes possession, the seller often leaves the state. If he does not leave, a lawsuit may be necessary to collect, which in some cases may be a small amount such as the taxes on a residence for one year. As a practical matter, the buyer will wind up absorbing the loss rather than engage in litigation. As was observed by the Supreme Court of Alabama in its opinion in *State v. Mortgage-Bond Co. of New York*, 224 Ala. 406, 409, 140 So. 365, 368 (1932), "The public good requires security of titles as well as just taxation and the law aims at both." Good faith purchasers should be entitled to rely on the tax records.

The majority finds support for its position in the fact that in Utah, by statute, land and any improvements thereon are separately assessed. I disagree that that fact makes any difference. Several courts which subscribe to the rule which I advocate have held that the separate assessment is simply to aid the taxpayer and the assessor in arriving at a fair evaluation of the land and improvements. It does not make improvements a separate class of property. *Palmer v. Beadle County*, 70 S.D. at 102, 15 N.W.2d at 7; *State v. Mortgage-Bond Co. of New York*, 224 Ala. at 409, 140 So. at 368; *Leyh v. Glass*, 508 P.2d at 263. Taxpayers have the right to protest what they consider an overvaluation. Since land and improvements are appraised by different methods and standards, both the assessor and the taxpayer are assisted by separate assessments. However, once the assessment has been made, the tax rolls are sent to the county treasurer for the application of the mill levy to the total assessment. There, taxes are computed on the combined value of the land and improvements; one lump sum results. If a partial payment is made, that payment is applied on the total taxes without any breakdown between land and improvements. If the taxes are not paid, eventually the county sells the land and improvements together without any breakdown. There is but one lien on the property for the taxes owing on the combined assessed values of land and improvements. Clearly, the separate assessment of land and improvements does not support the majority's position.

I also disagree with the majority that there is comfort for its position in *Union Portland Cement Co. v. Morgan County*, 64 Utah 335, 230 P. 1020 (1924). The majority has failed to point out that in that case, there was no change of ownership as in the instant case. Furthermore, the taxpayer had furnished the assessor with either a false or an obviously incomplete statement of the improvements on the property, and the omission was discovered before the taxpayer paid his taxes for that year. I have no quarrel with that decision, but it is obvious that the facts are unlike those we are confronted with here. It is true that in that case we stated that the reason the property was omitted was immaterial and that if property were omitted, it was the duty of the assessor to assess it. Since this Court did not have before it a fact situation anything like the facts with which we are now confronted, the *dicta* in *Union Portland* cannot be considered to be authority for this more complex situation.

I would affirm the Utah Tax Commission.

DURHAM, J., concurs in the dissenting opinion of HOWE, Associate C.J.

ZIMMERMAN, J., having disqualified himself, does not participate herein; BENCH, Court of Appeals Judge, sat.