[S. F. No. 17195. In Bank. Feb. 11, 1947.]

WILLIAM J. WARDALL, as Trustee etc., Respondent, v. STATE OF CALIFORNIA et al., Appellants.

RAY CAVAGNARO, Respondent, v. STATE OF CALIFORNIA et al., Appellants.

Robert W. Kenny, Attorney General, Carl W. Wynkoop, Miriam E. Wolff and John L. Nourse, Deputy Attorneys General, for Appellants.

Sefton & Quattrin and Seibert L. Sefton for Respondents.

CARTER, J.—Plaintiffs in these consolidated cases are licensed by the Board of Equalization (hereinafter referred to as board) as wholesalers and importers of distilled spirits pursuant to the Alcoholic Beverage Control Act (Stats. 1935, p. 1123; Deering's Gen. Laws, 1935 Supp., Act 3796), and the issue is whether the board may make a deficiency tax assessment and levy after having previously levied an assessment for the same period.

In the Cavagnaro case, from a report by the board's auditors after an audit of Cavagnaro's records, a tax of $647.31 was levied for the period July 1, 1935, to December 31, 1937, and notice thereof sent to Cavagnaro advising him that the levy is "based upon an examination of available records and other information in possession of the Board"; that he could petition for a relevy within 15 days; and that if he failed to do so "the amount of this levy becomes final." Cavagnaro did not request a relevy and paid the tax. In 1939 the board made an audit of Cavagnaro's records for the period January 1, 1938, to June 30, 1939. Following consultation between the board's and Cavagnaro's auditors it was concluded and the auditors' report showed that the tax for that period was $18.62, but the notice of levy from the board

placed the tax at $294.82, and Cavagnaro petitioned for a re-levy pursuant to section 27b of the act. The board's decision on such petition was to levy $18.62 for the last mentioned period, $187.49 for the period July 1, 1937, to December 31, 1937, and $72.00 for the period July 1, 1935, to June 30, 1937, that is to say, making an additional levy of $259.49 for the period first above mentioned.

In the Wardall case substantially the same events transpired.

We thus have a situation in which the taxpayer paid the tax as levied for a certain period. Thereafter he protested the levy for a subsequent period and in the decision rendered therein an additional levy is made for the first period. There is no intimation that the tax so levied was not in fact due under the law; the sole contention is that the assessment and levy for the first period, being uncontested, was final and no further levy could be made by the board.

The Alcoholic Beverage Control Act (*supra*) embraces the licensing and regulation of the disposal of alcoholic beverages. It imposes a license fee on wholesalers of distilled spirits. In addition "An excise tax is *hereby imposed* upon all distilled spirits sold in this State by rectifiers or wholesalers thereof, at the following rates: . . ." [Emphasis added.] (Stats. 1935, p. 1132, as amended, Stats. 1937, p. 2144, § 24; Deering's Gen. Laws, 1937, Act 3796.) The method of collecting that tax was by stamps (it has since been changed). "The tax imposed by section 24 of this act upon the sale of distilled spirits shall be collected from rectifiers and wholesalers of distilled spirits and the payment of the tax shall be evidenced by stamps issued by the board to such rectifiers and wholsalers." (Stats. 1935, p. 1132, as amended, Stats. 1937, p. 2153, § 33; Deering's Gen. Laws, 1937, Act 3796.) In order to assure the collection of the tax on all spirits sold, the act provided: "The board may examine the books and records of any person required to make said statement, and may also examine the books and records of any licensee as herein defined, and such books and records shall at all times be subject to the inspection of said board or its representatives during regular business hours.

"If *any* examinations or investigations made by the board shall disclose that any reports of manufacturers or importers theretofore filed with said board by said manufacturers or im-

porters pursuant to the requirements of this act, have shown incorrectly the amount of alcoholic beverage sold or the excise tax accruing thereon, said board shall have the power and is hereby authorized, to make *such changes* in *subsequent assessments* of said manufacturers or importers under this act as *it may deem necessary* to correct the errors disclosed by its examination of the records of said manufacturers or importers or its investigations in pursuance of its powers hereunder." [Emphasis added.] (Stats. 1935, p. 1132, § 27; Deering's Gen. Laws, 1935 Supp., Act 3796.) And further "If, after giving effect to the provisions of section 24.2, *any* examinations or investigations made by the board shall disclose that the amount of excise stamps purchased from the board by any rectifier or wholesaler *is not sufficient to represent payment of the excise tax imposed* upon the sale of distilled spirits sold by such rectifier or wholesaler, the board shall have the power, and is hereby authorized, to make a levy against such rectifier or wholesaler in the amount of the deficiency in the payment of the distilled spirits excise tax so disclosed." [Emphasis added.] (Stats. 1935, p. 1132, § 27, as amended, Stats. 1937, p. 2147.) Notice shall be given of such levy, and within 15 days the taxpayer may petition for a relevy (that is, a correction of the levy). The effect of the procedure is: "If such petition for relevy is not filed within said 15 day period *the amount* of the levy becomes *final* at the expiration thereof." [Emphasis added.] (Stats. 1937, p. 2148, § 27b.) Plaintiffs urge that the making of the levy final where no request for a relevy is made precludes the board from later making an additional levy for the same period as was done in the cases at bar.

It is clear that the statute itself levies—imposes the tax and the only thing done by the enforcing officials is a determination of the amount due in a particular case. To that end the board (enforcing officials) may make examinations and investigations of the taxpayer's records and return, and if it finds the tax paid by way of purchase of stamps is not enough, then it may "levy" for the deficiency. Although that process is referred to as a levy, it is more nearly like an assessment; the tax is levied by the statute. The process contemplates an ascertainment of the amount of the tax and in that sense is an assessment thereof. It is the first assessment by the tax officials inasmuch as it is the first action on their part in determining the amount of the tax. Hence in the instant cases the

nature of the "levy" or determination of the deficiency was really the first assessment. In that respect it is similar to the assessment of real property for an ad valorem tax by an assessor, and in such case, the general rule is that where the statute imposes on the assessor the duty to assess all property or otherwise indicates a power to do so, omitted property or that which has escaped assessment on one occasion may be reached in a subsequent assessment or reassessment. That is to say, the assessor's assessment is not final as to the taxing agency. (See *Fullerton Oil Co.* v. *Johnson,* 2 Cal.2d 162 [39 P.2d 796]; *Whiting Finance Co.* v. *Hopkins,* 199 Cal. 428 [249 P. 853]; *Rosasco* v. *County of Tuolumne,* 143 Cal. 430 [77 P. 148]; *Kern Valley etc. Co.* v. *County of Kern,* 137 Cal. 511 [70 P. 476]; *Security Savings Bank* v. *San Francisco,* 132 Cal. 599 [64 P. 898]; *San Francisco* v. *La Societe Francaise,* 131 Cal. 612 [63 P. 1016]; *People* v. *National Bk. of D. O. Mills & Co.,* 123 Cal. 53 [55 P. 685, 59 Am.St.Rep. 32, 45 L.R.A. 747]; *Farmers etc. Bank* v. *Board of Equalization,* 97 Cal. 318 [32 P. 312]; 51 Am.Jur., Taxation, § 734.) There is the strong policy underlying such a rule that otherwise all persons or property would not share equally the burden of taxation and although the tax may not have been collected it is still payable under the statute.

There is clear statutory authority in the instant cases for the correction of the first assessment (determination of the amount of the tax) that is, for a reassessment or supplemental assessment. The statute imposes the tax and it is the duty of the board to collect. Furthermore, under section 27 if *any* examinations or investigations (plural) (that could apply to subsequent assessments or reassessments) disclose that the tax has not been paid or has been incorrectly computed, the board is authorized to make changes in *subsequent* assessments as it deems necessary to correct the errors. Here we have express authority to make an additional determination of the amount of the tax after the first has been made.

After the original determination the taxpayer may petition for a "relevy," that is, a reconsideration of the original determination. That redetermination contemplates a hearing— a thorough examination of the taxpayer's liability, a situation that does not exist in the original determination. What would be the effect of a decision after such a hearing (as binding on the state and taxpayer) we need not determine. If the taxpayer does not request a "relevy" the amount of the levy

becomes final. By reason of the general rule heretofore noted and the power given to the board to make other determinations beyond the original one we do not believe that finality as to the state results from the use of the word ''final.'' Moreover it is the *amount* of the ''levy,'' that is, the original assessment that becomes final. It is only the amount of that particular deficiency levy—assessment that is involved, not whether there are more taxes which might be due upon a further investigation.

The judgment in each case is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. In my view the opinion of the District Court of Appeal, First Appellate District, Division 1, prepared by Mr. Justice Ward and reported in 166 P.2d 23, affirming the judgment of the trial court, correctly and justly disposes of the issues presented. For the legal reasons therein made amply manifest and, also, because I believe that governmental agencies should be held to standards of integrity and diligence comparable to those exacted of persons in private life, I would affirm the judgments appealed from.

Edmonds, J., concurred.