GARCÍA COMMERCIAL, INC., Plaintiff and Respondent, *v.* SECRETARY OF THE TREASURY, Defendant and Petitioner.

No. 11536. Submitted May 8, 1956.—Decided October 14, 1958.

J. B. Fernández Badillo, Attorney General (José Trías Monge, former Attorney General, in the brief) and Cándido Ceballos, Assistant Attorney General, for petitioner.   Gaetán Roberts and Alcalá for respondent.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

This is a suit to obtain refund of the property tax that the plaintiff paid for the years 1951–52 and 1952–53.   There is no dispute as to the essential facts.   In synthesis they are as follows: (1) the personal property owned by García Commercial, Inc. on January 1, 1951 in Santurce, was assessed at $715,770 for the tax year 1951–52; (2) the notice of that assessment was served on June 9, 1952, and on the same day plaintiff was notified that the tax levied on said personal property for the year 1951–52 amounted to $15,106.33; (3) on December 12, 1952 plaintiff paid the tax levied by the Secretary of the Treasury; (4) the personal property owned by García Commercial Inc. on January 1, 1952 in Santurce was assessed at $1,189,530 for the tax year 1952–53; (5) the notice of that assessment was served on June 30, 1953, and on the same day plaintiff was notified that the tax levied on said personal property for the year 1952–53 was $26,171.20; (6) plaintiff paid the whole tax thus levied in two instalments: $9,195.20 on February 25,

1954 and $16,975.30 on July 29, 1954; (7) having requested the refund of the taxes paid for the years 1951–52 and 1952–53, the Secretary of the Treasury denied the refund on August 5, 1954.

Based on those facts, on August 12, 1954 García Commercial, Inc. filed a claim against the Secretary of the Treasury for refund of tax. It alleged before the Superior Court that the taxes were void because they were based on a retroactive assessment. Its sole contention was that pursuant to the provisions of § 303 of the Political Code (13 L.P.R.A. § 453), notice of the assessment of personal property should be served before the end of each calendar year, that is, on or before December 31, 1951 for the tax year 1951–52, and on or before December 31, 1952, for the tax year 1952–53. The lower court entered judgment granting the claim for refund. It decided that the tax notices were not served within the time fixed by law, that the Secretary of the Treasury lacked authority to assess personal property with retroactive effect, and that the taxes levied and paid were void. We believe that the judgment must be reversed because the tax notice of personal property can be served at any moment *before the expiration of the tax year* on which the property tax is assessed and levied. In other words, the tax notices served by the Secretary of the Treasury in this case—on June 9, 1952 for the tax year 1951–52 and on June 30, 1953 for the tax year 1952–53—were not late or retroactive according to the aforesaid § 303.

██ All personal and real property in Puerto Rico not exempt from taxation is subject to payment of the annual *ad valorem* tax known as "property tax." On the first of January of each year taxes are directly levied by law for the next tax year. To fix the specific amount in each case the Secretary of the Treasury makes a subsequent assessment of the different property and levies the tax owed by each owner. As we have repeatedly held, the taxable status of the property arises on January first of each year for

the following tax year in order to determine: (1) the existence of taxable property, (2) the value thereof, and (3) the person liable for the payment of tax.[1] For that reason, on January 1 of each year, the Secretary of the Treasury begins the tax procedure fixed by law for the assessment and levy of property tax corresponding to the following fiscal year. He must designate and describe the different personal and real property, fix an assessment on said property, notify the different taxpayers of the appraisal or assessment, levy a tax (multiplying the value by the tax rate established by law) and notify the respective owners of the tax levied.

Normally the term "assessment" means the *appraisal* of the property. But that stage of the tax procedure only ends when the Secretary of the Treasury notifies the appraisal to each taxpayer. Cf. *Realty Corporation* v. *Treasurer*, 78 P.R.R. 16 (1955); *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 69 (1949), and *Rossy* v. *Tax Court*, 66 P.R.R. 405 (1946). Although today the jurisdiction of the Superior Court can not be invoked by means of an appeal from the assessment, and the right to appeal is only granted from the levy of the tax, § 309 of the Political Code provides that when any change is made in the existing assessment of the property of any taxpayer or whenever the property of a taxpayer not previously assessed is assessed, or any change is made in the assessment return filed by a taxpayer, or when the taxpayer has requested a reassessment of his property, the Secretary of the Treasury ". . . *shall serve notice on said taxpayer of the assessment and of the tax levied. . . .*" (Italics ours.) Said notice should be served personally or by mail. 13 L.P.R.A. § 459. Note that the assessment of a previous year may be used as basis to assess and levy the

---

[1] *Buscaglia, Treas.* v. *Tax Court*, 68 P.R.R. 35 (1948); *National Hats Co.* v. *Sancho, Treas.*, 65 P.R.R. 226 (1945); *Buscaglia, Treas.* v. *Tax Court*, 63 P.R.R. 37 (1944); *Valcárcel* v. *Sancho, Treas.*, 61 P.R.R. 207 (1942); *Roig* v. *Treasurer*, 54 P.R.R. 617 (1939); *Teachers' Ass. Etc.* v. *Treasurer*, 54 P.R.R. 511 (1939). See 3 Cooley, *The Law of Taxation*, § 1062 (4th ed. 1924).

taxes for a subsequent year, if the taxpayer does not request the reassessment of the property or if the Secretary of the Treasury *motu proprio* does not proceed to reassess or revalue the property. It is so expressly provided by § 295 of the Political Code, 13 L.P.R.A. § 447. This applies to real as well as to personal property. *Hernáiz, Targa & Co.* v. *Treas. of P. R.*, 32 P.R.R. 609 (1924). In such case, the notice of assessment and of levy of the tax is made by means of the notices that the Secretary of the Treasury must fix and post in the manner provided in § 307 of the Political Code, 13 L.P.R.A. § 458.

■ Obviously there exists no time limit to restrict the power of the Secretary of the Treasury to assess and levy the property taxes. See *Wardall* v. *State*, 177 P.2d 270, 272 (Cal. 1947); *Galusha* v. *Wendt*, 87 N.W. 513 (Iowa 1901); *Mueller* v. *Mercer County*, 60 N.W.2d 678 (N. D. 1953); 51 Am. Jur., *Taxation*, § 734 and cases therein cited. On the other hand, there is no doubt that the Legislature can fix a time limit for the assessment of property and levying of the tax. In such case the limit operates as a limitation period. See *Bell* v. *Stevens*, 90 N.W. 87 (Iowa 1902); *Shearer* v. *Citizens' Bank of Washington County*, 105 N.W. 1025 (Iowa 1906); 1 *P-H State and Local Tax Service*, § § 93692 and 93694; 51 Am. Jur., *Taxation*, § 734.

■ Does our law fix a limitation period for the assessment of property and the levying of a tax? As to *real* property there is no limitation period whatever. *Martínez* v. *Sancho, Treas.*, 53 P.R.R. 527, 535 (1938). As to *personal* property, in 1907 the Legislature amended § 303 of the Political Code (Sess. Laws, pp. 335–36; 13 L.P.R.A. § 454) to provide that, if any real property has been improperly omitted from the assessment of property of any taxpayer *for a fiscal year*, the Secretary of the Treasury may not in a *subsequent year* assess said property and levy the tax that should have been paid in the year when the incorrect assessment was made. In effect, the above-mentioned § 303

(as amended in 1907) provides that as to *real* property improperly *omitted from the assessment of a tax year*, the Secretary of the Treasury ". . . shall immediately cause the same to be assessed for the years for which such property has filed of assessment and to add such property to the tax-rolls for such years and proceed to the collection of the taxes corresponding to the same. . . ." Thus, having omitted any reference to personal property, the power of the Secretary of the Treasury to assess and levy taxes on personal property improperly omitted from the assessment for a fiscal year was impliedly limited. This arises even clearer if we consider the second part of said § 303, as amended in 1907: ". . . In all cases where property, *real or personal*, has been assessed for any fiscal year or years, but such assessment has been made in other than the name of the true owner or possessor thereof, or has been so made as to be void, the Secretary of the Treasury of Puerto Rico shall cancel such assessment, eliminate the same from tax-rolls, and withdraw and cancel the tax-receipts . . . and shall proceed to reassess such property and correct the tax-rolls accordingly, and correct the taxes in so far as may be pending payment corresponding to such re-assessment in the same manner as is herein in this section provided for the assessment and collection of taxes on *real* property that had improperly failed of assessment." (Italics ours.) *Cf. Buscaglia, Treas.* v. *Tax Court,* 70 P.R.R. 69 (1949). In brief it may be said that as to taxable *personal* property, a "retroactive" assessment for the purpose of levying the property tax is not valid. *Cf. José Romaguera e Hijos* v. *Court of Tax Appeals,* 61 P.R.R. 110 (1942).

Of course, retroactivity can not exist where the Secretary of the Treasury assesses the personal property within the normal term fixed by law for making the assessment of the property and sending notice of said assessment to the tax-payer. Let us then see what our statute provides for that essential question. Pursuant to § 295 of the Political Code,

the Secretary of the Treasury may correct, amend or revise the "assessment roll for the next fiscal year" (*i. e.* the assessment of property just as it appears in the tax-roll of the previous year) in the following manner: " . . . *As soon after January first of each year as is possible* . . ." filling out assessment schedules or cards showing in detail each real and personal property subject to taxation within one same municipality " . . . belonging on January first to each taxable person *whose property has not been previously assessed* or whose property, in the opinion of the Secretary of the Treasury . . . *should be revalued or reassessed* for purposes of taxation. . . ." (Italics ours.) 13 L.P.R.A. § 447. In the case at bar that was precisely the procedure followed by the Secretary of the Treasury, since to assess petitioner's personal property for the years 1951–52 and 1952–53, he did not use as a basis the assessment of previous years but instead proceeded to reassess them. As may be seen, the statute prescribes that the process of assessment, in the case of omitted personal property or in the case of their reassessment, begins on January first of each calendar year. Nevertheless, it does not expressly establish that that assessment must be terminated on a particular date. Later on it provides how and when the Secretary of the Treasury shall send the notice of assessment and of the tax levied to the taxpayer. Section 307 of the Political Code provides that "As fast as the assessment or revision of the assessment of property . . . is made, or at such intervals of time as may be fixed by the Secretary of the Treasury, each assessor shall promptly transmit the complete schedules to the Secretary of the Treasury, who shall cause them to be examined and arranged, and he shall levy the corresponding tax. . . ." It adds that once the tax is levied and within the first ten (10) days of the receipt of the corresponding receipts for their collection, each collector shall post a notice stating the date from which the said receipts are in the office of the collector and it shall be the duty of the Secretary of the Treasury,

within the term of ten (10) days following the date when the corresponding receipts were sent by him to the various collectors, to give notice of this fact to the public in at least one of the dailies of general circulation. 13 L.P.R.A. § 458. On the other hand, § 309 of the Political Code provides that *"When any change is made in the existing assessment of the property of any taxpayer, or whenever the property of a taxpayer not previously assessed is assessed,* or whenever any change is made in the assessment return . . . or when such taxpayer has requested a reassessment . . . the Secretary of the Treasury . . . *shall serve notice on said taxpayer of the assessment and of the tax levied. . . ."* by delivering the notice personally or by mail. (Italics ours.) 13 L.P.R.A. § 459. Here no normal term is expressly fixed either to terminate the notice of assessment or appraisal of the property or to serve notice of levy or the tax. We have already pointed out that the case at bar is one of an assessment of omitted personal property or a reassessment thereof. Therefore, the notice of said assessment is governed by the provisions of the above-mentioned § 309 of the Political Code.

Nevertheless, it is inferred from all the aforementioned statutory provisions (1) that the assessment of personal and real property is a preliminary step to the levying of property tax and (2) that by law said tax is levied *for* every fiscal year that begins on July 1 and ends on June 30 of the following year. Therefore, in the absence of a specific provision of law establishing the normal period for the assessment, it is logical that the Secretary of the Treasury should use for making the assessment the period of time between January 1 of each calendar year, which is the date in which the "taxable status" of the property arises and the date of expiration of the following tax year for which said assessment serves as a basis. In our judgment, the legal provisions relative to the assessment of personal and real property and to the levying of property tax, clearly indicate that the Secretary of the Treasury has that 18-month period to finish the

*whole* process or procedure of taxation by virtue of which the tax is fixed for the ordinary fiscal year. That is, before a tax year ends an assessment for the purposes of levying the property tax corresponding precisely to that current year can not be characterized as *retroactive*. Rationally not until the following tax year expires, the normal period for assessment of personal property can not have elapsed. Said assessment constitutes a mere appraisal used by the Secretary to fix the amount of the tax that he should levy *for* the current fiscal year.

The provisions of § 303 of the Political Code (as amended in 1907), ratify our conclusion that the normal period to assess and levy property tax begins on January 1 of each year and ends at the expiration of the following tax year. In effect, upon authorizing the retroactive assessment of any omitted real property, said legal precept refers squarely to " . . . real property liable to taxation [that] has been omitted from the assessment of property of any taxpayer *for any fiscal year or years*. . . ." (Italics ours.) Besides, upon referring to the power of the Secretary of the Treasury to correct assessments of personal or real property made in other than the name of the true owner or possessor thereof, or which has been so made as to be void, it repeats with emphasis that it means all cases " . . . where property, real or personal, has been assessed *for any fiscal year or years*. . ." (Italics ours.) 13 L.P.R.A. § 454.

██ The contention that the limitation period fixed in § 303 for the assessment and levying of taxes on personal property expires on December 31 of each year, is not only contrary to the legal text but it also leads to an illogical result: six months before the expiration of the tax year for which property tax is assessed and levied, said limitation period would have already expired. Besides one must always attribute to the law the most logical sense that will accomplish the intended purpose of the Act. The essential purpose of the restriction imposed by § 303 as to the assess-

ment of personal property is to free the taxpayers from unjust and onerous situations. Personal property does not have the stability and permanence of real property. That is why the law fixes a time limit for the Secretary of the Treasury to assess them and levy the tax. But the limitation period of 18 months is more reasonable than the 12-month period, taking into consideration the economic and social interests involved. Public policy demands that all persons and property share the tax burden equally and that certain persons should not be permitted to evade their obligation to pay them because of omissions in the tax-rolls. Jensen, *Property Taxation in the United States* (1931). That is why we must interpret strictly and favorably to the state treasury the time limitation fixed by § 303 of the Political Code, as amended in 1907. See *Mueller* v. *Mercer County,* 60 N.W.2d 678 (N. D. 1953); *Wardall* v. *State,* 177 P.2d 270 (Cal. 1947); *Duke Power Co.* v. *Hillsborough T.P. Somerset County,* 26 A.2d 713 (N. J. 1942); *In re State Line & S.R.Co.'s Taxation,* 107 Atl. 860 (Pa. 1919); *Bell* v. *Stevens,* 90 N.W. 87 (Iowa 1902); 3 Sutherland, Statutes and Statutory Construction, § 6706 (3rd ed.), and cases therein cited; *Note, Provisions of Tax Statute as to Time for Performance of Acts by Boards or Officers as Mandatory or Directory,* 151 A.L.R. 248 (1944). *Cf.* 10 Mertens, The Law of Federal Income Taxation (Zimet Revision), § 57.02.

■■ The taxpayer argues that the "taxable status" of personal property arises on January 1 of each year; that the assessment and levying of taxes for the following fiscal or calendar year is based on the value of the property at that date; and that when the new tax day for the following calendar year arrives chronologically, any assessment made on that date or previously would become *retroactive* to the current fiscal year. This reasoning incurs in the fallacy of taking for granted what one is trying to prove. In effect, the fact that personal property should be assessed for its value on January 1 of the calendar year, does not mean in

itself that the Secretary of the Treasury is limited to make the assessment before the next tax day. On the other hand, we must also reject defendant's argument that the term "assessment" in § 303 of the Political Code does not include the notice of the assessment to the taxpayer. Should we accept that interpretation, the time limit established in the above-mentioned § 303 for the assessment and levying of tax on personal property would be defeated. Legally, the assessment is perfected only when the taxpayer is notified of the assessment in the manner prescribed by law.

In the *Romaguera* case, *supra*, the assessment of personal property on February 13, 1941 was challenged " . . . for the purpose of a tax assessment . . . for the fiscal years comprised between 1934–35 and 1941–42." We declared that said assessment was void by virtue of § 303 of the Political Code. Obviously such conclusion was improper, either on the basis of a limited 12-month period or on the basis of an 18-month period, as to the assessment and levying of property tax for the year 1941–42. Neither was it explained why the tax for the year 1940–41 was void pursuant to § 303. We must hence conclude that the precise question raised here was neither analyzed nor decided in that case: when is an assessment of personal property *retroactive*.[2] In any case, we now hold that the normal period to assess and levy tax on personal property begins on January 1 of each calendar year and it ends on the expiration of the following tax year. Thus, an assessment made within that period is "not retroactive" for the purpose of levying property tax for the ordinary year. In our opinion that is the only correct legal rule. And, insofar as it is incom-

---

[2] Note that in *Realty Corp. v. Treasurer*, 78 P.R.R. 16 (1955) the notice of the assessment of personal property (and of levy of the tax) for the year 1948–49, was made on February 11, 1949. In that case no one raised any question whatever as to retroactivity pursuant to § 303 of the Political Code. On appeal we decided that the lower court lacked jurisdiction because the taxpayer had filed his complaint outside the term fixed by law which is granted in cases concerning property taxes.

patible with the same, the *Romaguera* case is overruled. *Cf.* Hellerstein, *State and Local Taxation*, Part VI: *Ad Valorem Property Taxes* 643–707 (1952); and *The Assessment and Collection of Taxes* 781–823, Ch. 17.

We must point out that Act No. 67 of 1954 (Sess. Laws, p. 358) amended § 303 of the Political Code to provide that: ". . . . The Secretary of the Treasury or his agents in charge of property assessment shall have until up to the last day of the taxable year to assess and review the assessment of personal property for the taxable year involved." Prior to the enactment of this Act a bill was presented and defeated in the Legislature proposing to give to said amendment retroactive effect to the 1st of January, 1951. See Journal of Sessions 415–417, 524–535, Vol. III (1953); and Journal of Sessions 233–234, 1423, 1446–1447 Vol. IV (1954). It was due to several decisions delivered by the Superior Court, in which the 12-month limitation period was erroneously adopted pursuant to § 303 for the assessment of personal property, that the Legislative Assembly deemed it was necessary to take immediate action to fix said term at 18 months. Although said amendment was finally adopted with prospective character, the legislative debates prove without doubt that the Legislative Assembly did not intend to ratify legislatively the judicial interpretation of the Act adopted by the Superior Court. The refusal of the legislative power to give retroactive effect to said amendment only means that it left in the hands of the courts the decision as to which should be the correct interpretation of the provisions of § 303 from 1907 to 1954. See Sutherland, *op. cit. supra*, Vol. 1, §§ 1929–1936; Vol. II, § 5110; Crawford, *The Construction of Statutes*, §§ 302–306 (1940); Notes in 50 Yale L. J. 1294 (1941) and 59 Harvard Law Rev. 1277 (1946).

In view of the foregoing, it is unnecessary to decide whether plaintiff has a right to claim the refund of taxes which it paid voluntarily after they had prescribed, as it

alleged in its claim herein, taking as a basis a 12-month period from January 1 of each calendar year. The Secretary of the Treasury alleges that the taxpayer having admitted that it owed the taxes which it had paid, if they had not prescribed, our ruling in the income-tax case of *Sucrs. de Sobrino & Cía.* v. *Tax Court*, 68 P.R.R. 809 (1948) is applicable. *Cf.* § § 321 and 322 of the Income Tax Act of 1954, 13 L.P.R.A. Cum. Supl. § § 3321 and 3322; 10 Mertens, *op. cit. supra,* § 5840; Hellerstein, *op. cit. supra* 824–836. Nevertheless, it would be inappropriate to consider that contention, since the assessments in the case at bar were neither untimely nor retroactive.

The judgment appealed from will be reversed and the claim for refund denied.

Although Mr. Chief Justice Negrón Fernández was not present when this judgment was signed he participated in the consideration of the case and agrees with the opinion of the Court.

Mr. Justice Santana Becerra did not take part herein.